## COMMONWEALTH v. SUSAN CROMPTON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 16, 1890—Decided October 13, 1890.
[To be reported.]

1. Proceedings to escheat the estate of a decedent who died intestate, without heirs or any known kindred, are regulated by the statutes, and these statutes permit any person, in whose hands or possession the goods and chattels are found, to traverse the inquisition in the Court of Common Pleas.

2. Even though, the traverser being an administrator of the decedent and claiming to hold the goods and chattels in dispute in his own right under an alleged gift, an effort was made to surcharge him with them upon a pending proceeding in the Orphans' Court, the right of the traverser and the jurisdiction of the Common Pleas cannot be doubted.

3. And, that the administrator noted upon the inventory filed and in the account presented that the disputed goods specified were in his hands, but held in his own right as a gift from the decedent, will not estop him from asserting his claim upon a traverse of the inquisition in the Court of Common Pleas.

4. Where it is apparent from the evidence that an absolute and present gift of non-negotiable securities, e. g., shares of railroad stock, is intended, a gift of them, valid against a volunteer, may be made by delivery to the donee without assignment or indorsement in writing, and without compliance with the forms required by the corporation.

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 104 July Term 1889, Sup. Ct.; court below, No. 754 December Term 1887, C. P. No. 3.

On March 5, 1888, in the matter of the escheat of the estate of Alexander McNaughton, deceased, an issue was formed upon a traverse of the inquisition filed by Susan Crompton, administratrix of said deceased, in which issue the commonwealth was made plaintiff and Susan Crompton, administratrix, was made defendant.

At the trial of the issue on January 11, 1889, the plaintiff put in evidence the inquisition filed February 9, 1888, finding that Alexander McNaughton had died November 22, 1886, intestate, without any known heirs or kindred, owning certain personal estate, to wit, cash, $919.57; U. S. bond for $1,000; 100 shares Penna. R. Co. stock, $5,000; 24 shares Lehigh V. R. Co. stock, $1,200; 7 shares preferred North. Pacific R. Co. stock, $420; and that said personal estate was in the possession of Susan Crompton, administratrix of the estate of Alexander McNaughton, deceased.

A record of the Orphans' Court for Philadelphia county, in the matter of the adjudication of the account of Susan Crompton, administratrix of the estate of said deceased, was also put in evidence. From this record it appeared that an inventory of the decedent's estate had been filed by Susan Crompton, as administratrix, showing personal effects of the value of $55.50 and containing a memorandum as follows: " There are also in the hands of Mrs. Crompton, and claimed by her in her own right, by delivery to her of the certificates thereof by the decedent in his lifetime, cash in Manayunk Savings Bank, $1,695," —here followed a specification of the U. S. bond and the railroad shares in controversy. The record disclosed further that on January 6, 1888, upon the audit of the account of Mrs. Crompton, the following adjudication was filed, PENROSE, J.:

" The decedent died, as represented in the petition annexed, November 22, 1886, intestate, unmarried, and without issue, and, so far as known, leaving no kindred. Proceedings for escheat have been instituted, and Frederick Gaston, Esq., appointed deputy escheator.

Statement of Facts.

" Mr. McIntyre objected to proceeding with the settlement of the account, on the ground that it was not called for by any one having the right to do so. The objection was overruled. More than a year has expired since the grant of administration, and the interest of the commonwealth, though inchoate, is such as to make it necessary to now ascertain the value of the estate which will pass if the escheat should hereafter be established in the manner provided by the act of assembly.

" It was claimed by the accountant, that the cash and securities mentioned in the account belonged, not to the decedent, but to herself in her individual right; and in support of her assertion she offered to prove, she being the witness, that at the moment of the death of the decedent all of the securities were in her custody and possession. The evidence was objected to, and excluded, as insufficient for the purpose intended. It was admitted that the securities all stood in the name of the decedent, and that the cash in bank was deposited to his account. It may be conceded that the accountant was not incompetent on the ground of interest, under the principle of Stephens v. Cotterell, 99 Pa. 188, though the evidence as to facts existing at the instant of the death of the decedent, or immediately thereafter, necessarily proved that the same facts existed prior to such death; see, however, Foster v. Collner, 107 Pa. 305. But the mere custody of choses in action standing in the name of the decedent cannot, without further evidence, establish ownership on the part of the custodian. There was no suggestion of the existence of other evidence, and no request for time to obtain it.

" The claim, therefore, necessarily fails. It may be added that the testimony of other witnesses, called, completely negatived the assertion that the claimant had even the custody of the securities when the decedent died. They were found, after his death, in a trunk or chest, kept in an exposed place, in which he had placed them, the claimant not being aware of the fact until they were so found. . . . . The balance, composed of the securities mentioned in kind and cash, will be retained by the accountant for the benefit of the estate, until the further order of the court."

Testimony having been adduced supporting the findings of the inquisition, the plaintiff rested.

The defendant's case being opened, James Crompton was called, when the plaintiff objected to any evidence on the part of the defendant, on the ground that Susan Crompton, as administratrix, had no standing to traverse the inquisition, and any evidence in support of the traverse filed was therefore inadmissible.

By the court: Objection overruled, exception.[1]

The witness then testified as to the bad health of Alexander Crompton for several years before he died on November 22, 1886, and as to a statement made by him that "he did not expect to live long; that if he should die, mother should take all he had."

Robert H. Crompton, a son of defendant, aged thirty-five years, testified:

"I am a tapestry weaver. I live at home with my mother. I know Alexander McNaughton; lived with us for twenty-one years as a boarder. Was like one of the family. Mother did all of his washing and mending. He said that he would pay her some day. I got that box when I got a pair of shoes. I threw the box away when I took the shoes out. I saw it next in my mother's bureau drawer on Thanksgiving day, after he died. I saw Mr. McNaughton give the box to my mother the June before he died. He said to her, "Take it, it will be of some use to you after I die." Mother took it. She then went out to the butcher's; and when she came back, he gave it to her again and told her to put it away, it would be of some use to her. She did not think it was anything of any account. Mother said to him, "You get out." She thought it was only some old papers. Mother said to him it was only some old papers and of no account. He said to her, "it will be of some use to to you when I am gone." She put it away, and I never saw the box again until I saw it in my bureau drawer in my room. I never saw it after that until I saw it on the Thursday after he died. Mother then opened it, and found in it $1,000 United States bond and other bonds. The bank-book was in Aleck's closet in the back kitchen on the first floor. I saw it there the day after he died. My mother was present. The family were all there when we found it. We were looking for the bank-book, the Manayunk Bank. I saw it the first day after he died. The closet was not locked. Mother opened the closet and the box."

Statement of Facts.

Mary A. Crompton, Elizabeth Dabbs, daughters of defendant, corroborated the testimony of the preceding witness. William Witaker and other witnesses also testified, supporting the position of the defendant.

At the close of the testimony, the plaintiff submitted the following points for instruction:

1. That the said defendant, Susan Crompton, as administratrix of the estate of the said decedent, has no standing to traverse the inquisition, and the verdict must therefore be for the plaintiff.[3]

2. That there is not sufficient evidence of a delivery of the property in question to constitute a valid gift, and the verdict must therefore be for the plaintiff.[4]

3. That a gift of all the property of the donor, made in prospect of death, is not valid as a donatio mortis causa, whether accompanied by delivery or not, and the verdict must therefore be for the plaintiff: Headley v. Kirby, 18 Pa. 326.[5]

4. That the defendant having taken out letters of administration upon the property in question, as belonging to the estate of the said decedent, the Orphans' Court has exclusive jurisdiction of the same, and the question of her right to the said property, by virtue of an alleged gift from the said decedent in his lifetime, cannot be tried in this proceeding, and the verdict must therefore be for. the plaintiff.[6]

5. That under all the evidence in this case the verdict must be for the plaintiff.[7]

The court refused all the foregoing points and charged the jury in part as follows:

No matter how much Mr. McNaughton was indebted to Mrs. Crompton and her family for kindness and affection; no matter how frequently he may have said she should be rewarded, or frequently desired to make a will, unless he made the gift in the kitchen, as the witnesses have sworn, the verdict must be for the commonwealth.  [If, however, you come to the conclusion that he did give her the property in the manner in which the witnesses testified, or any other manner, your verdict must be for the defendant.] [2]

The jury returned a verdict in favor of the defendant. A

Arguments.

rule for a new trial having been discharged " on remittitur being filed for $1,695," the remittitur was filed accordingly and judgment entered on the verdict. Thereupon, the plaintiff took this appeal, assigning for error:

1. The admission of the defendant's offer.[1]
2. The portion of the charge embraced in [ ] [2]
3–7. The refusal of the plaintiff's points.[3] to [7]

On the argument at bar, the defendant moved to quash the appeal, claiming that, the proceeding being merely statutory, no writ of error or appeal lay: Miller v. Miller, 3 Binn. 30; that neither of the acts relating to escheats: September 29, 1787, 2 Sm. L. 425; April 2, 1821, 7 Sm. L. 457; March 19, 1823, 8 Sm. L. 100; March 27, 1824, 8 Sm. L. 267; March 16, 1827, 9 Sm. L. 441; April 6, 1830, P. L. 322, provided for a writ of error or appeal; that the proceedings were now reviewable, if at all, only upon certiorari, which did not bring up the evidence, and the evidence, therefore, was not before the court: Commonwealth v. Beaumont, 4 R. 365; Beaumont's Case, 1 Wh. 52; Commissioners' App., 57 Pa. 452; Union Canal Co. v. Keiser, 19 Pa. 134; Shenango Tp. v. Wayne Tp., 34 Pa. 184; Carpenter's Case, 14 Pa. 487; Hagerty's Case, 4 W. 305; Commonwealth v. Hogs, 10 S. & R. 395; Gest's Case, 9 S. & R. 317; and that the act of May 2, 1889, P. L. 66, was prospective only, and inapplicable.

In reply to the defendant's motion, the plaintiff cited: Act of May 22, 1722, § 9, 1 Sm. L. 138; Commonwealth v. Judges, 3 Binn. 273, 276; Commonwealth v. Beaumont, 4 R. 366–368; Ship Portland v. Lewis, 2 S. & R. 197; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411; Commonwealth v. Naile, 88 Pa. 429; In re Weaver, 116 Pa. 225–229; act of April 10, 1848, § 8, P. L. 450; act of April 10, 1849, § 7, P. L. 620.

*Mr. Samuel Gormley* (with him *Mr. John E. Faunce* and *Mr. Frederick Gaston*), for the appellant:

1. The jurisdiction of the Orphans' Court was exclusive, and that court having passed upon the claim of the defendant, the question was res judicata: Act of June 16, 1836, § 19, P. L. 792; act of March 29, 1832, § 2, P. L. 190; Commonwealth v. Palmer, 6 W. N. 486; Commonwealth v. Weart, 6 W. N. 237.

Arguments.

2. There was not sufficient evidence of the alleged gift to vest title in the defendant. In the court below, the alleged gift was treated as a gift inter vivos. So far as the requisites of a delivery are concerned, there is no distinction between such a gift and a donatio mortis causa: Nicholas v. Adams, 2 Wh. 22, 23 ; Walsh's App., 122 Pa. 177.

3. Had what was said at the time the alleged gift was made been reduced to writing, and even indorsed on the bond and certificates of stock, and although accompanied by a delivery of the box supposed to contain the securities, a valid gift, either inter vivos or mortis causa, would not have been constituted: Basket v. Hassell, 107 U. S. 602; Headley v. Kirby, 18 Pa. 326; Gourley v. Linsenbigler, 51 Pa. 345; s. c. 56 Pa. 166.

4. The English cases exhibit confusion : Rolls v. Pearce, L. R. 5 Ch. D. 730 ; Ward v. Turner, 2 Ves. Sr. 441 ; Moore v. Moore, L. R. 18 Eq. C. 474 ; but there is a line of American authorities, in which are the Pennsylvania cases, holding that a complete title must vest in the donee at the time of delivery, and that an assignment or some equivalent instrument is necessary in order to pass title to a chose in action : Walsh's App., 122 Pa. 177 ; Scott v. Lauman, 104 Pa. 593 ; Bond v. Bunting, 78 Pa. 210 ; Trough's Est., 75 Pa. 115.

5. As to railroad securities, the authorities are uniform that the mere delivery of the certificates does not constitute a valid gift: Ward v. Turner, 2 Ves. Sr. 431; Moore v. Moore, L. R. 18 Eq. C. 474; Williams on Pers. Prop., 359 n.; Pennington v. Gitting, 2 Gill & J. 208. If the subject matter of the intended gift be shares of stock in a company whose charter or by-laws require certain formalities to make the transfer effectual, it is essential that the formalities be complied with: Searle v. Law, 15 Sim. 95 ; Milroy v. Lord, 4 De Gex, F. & J. 264.

*Mr. J. Henry McIntyre* and *Mr. F. Carroll Brewster*, for the appellee :

1. The traverse of the inquisition arrested all further proceedings on the part of the commonwealth, until the traverse thus taken was finally disposed of and the inquisition confirmed; and by this traverse of the inquisition every fact found by it was denied and put in issue : Crawford v. Commonwealth, 1

Opinion of the Court.

W. 480.   Therefore, the question of the decedent's dying seised or possessed of the property in dispute, as well as all other facts, being determined against the commonwealth, it has no further standing: Desilver's Est., 5 R. 111.

2. The gift, in this case, was complete.   It was not a donatio mortis causa; it was not so claimed.   There was a consideration for it, which distinguishes it from all the cases cited by the plaintiff.   But, even where the element of indebtedness does not enter into the case, a valid gift of securities may be made without indorsement or assignment in writing: Grover v. Grover, 14 Mass. 261; Hackney v. Vrooman, 62 Barb. 650; Cooper v. Burr, 45 Barb. 9; 2 Kent Com., 438 d; Madeira's App., 17 W. N. 202; Licey v. Licey, 7 Pa. 251; Cross v. Powel, Cro. Eliz. 483.

3. A gift of a bond, or mortgage, or other security for money, accompanied by a delivery of the instrument, is an equitable assignment; and the legal representatives of the decedent in whom the legal title remains become trustees for the donor, and their names may be used by him to enforce payment: Bispham's Eq., §§ 167, 168, 172; Adams' Eq., 54, 79, 80; Snellgrove v. Baily, 3 Atk. 214; Gardner v. Parker, 3 Mad. 184; Blount v. Burrow, 4 Br. C. C. 72; Duffield v. Elwes, 1 Bligh N. R. 514; Wells v. Tucker, 3 Binn. 366; Brown v. Brown, 18 Conn. 410 (46 Am. Dec. 328).

OPINION, MR. JUSTICE McCOLLUM:

The specifications of error call in question the jurisdiction of the court, the right of the appellee to traverse the inquisition, and the sufficiency of the evidence to establish a valid gift.

Proceedings to escheat the estate of a person who dies intestate, without heirs or any known kindred, are governed by the statutes, and these allow any person in whose possession the goods and chattels are found to traverse the inquisition in the Court of Common Pleas.   In this case, the commonwealth seeks to escheat, as the property of Alexander McNaughton, deceased, certain goods and chattels in the possession of the appellee, who is the administratrix of his estate.   That she may traverse the inquisition as administratrix cannot be doubted since the decision of this court in Crawford v. Commonwealth,

1 W. 480. But, while she is described in the traverse as administratrix, she denies that the estate has any title to the property in question, and claims that she is the sole owner of it. There is nothing in the grant of letters of administration to her, in the inventory filed, or account stated by her, which estops her from asserting her claim upon a traverse in the Court of Common Pleas. It was not suggested upon the trial that this claim was res judicata, by virtue of any proceedings had upon it in the Orphans' Court, and the question is not before us on any specification of error. The point presented by the appellant recognized it as an unsettled claim, and asked for a verdict upon the traverse in favor of the commonwealth, upon the ground that the alleged gift was not established by satisfactory evidence, and that the question was exclusively for the Orphans' Court. If no mistake was made in the refusal of these points, the judgment must stand, as the question of fact raised by the traverse was fairly submitted to the jury.

It is provided by the escheat statutes that a claimant of the property may contest the inquisition before a jury, and they designate the Court of Common Pleas as the tribunal in which the issue made by the traverse shall be tried. The traverse may be general or special; it may extend to all, or be limited to one or more of the facts necessary to support the inquisition; but the jurisdiction cannot be doubted, as it is expressly conferred by the statutes under which the appellant claims. The commonwealth assented to the issue made by the traverse, and sought to obtain a verdict in it upon the merits and the grounds before stated, but did not intimate that the effort to surcharge the appellee in the Orphans' Court with the property in question was in the way of her recovery. The claim of the appellee is not res judicata by any decree of the Orphans' Court; it has not been finally adjudicated there. The report of the auditing judge is pending upon exceptions filed to it, and the adjudication has been stayed to await the determination of this issue. This is in accordance with the practice of that court, as shown by Murray's Est., 13 W. N. 552. As there are no heirs or creditors, and the parties to this suit are the only claimants of the property, their dispute should be settled in the tribunal and the manner appointed for its decision.

A gift needs no consideration to support it, yet in the present

case there was a valuable one acknowledged by the donor, and impelling him to the action which is the subject of this controversy. For twenty-one years he lived in the family of the donee as a boarder, and had his washing and mending done there, and for these he promised to pay her. He was in poor health the last four years of his life, and required and received from her and her children considerate care and attention. He often manifested grateful appreciation of these services, and expressed a purpose to make compensation for them. In execution of this purpose, he delivered to her the box containing the government bond and the certificates of railroad stock. It is apparent from the evidence that he intended to make an absolute gift of these securities to her, and that he supposed the delivery, and the words accompanying it, invested her with the exclusive control and ownership of them. There remains for consideration the question whether the failure to make a formal written transfer of the securities to the donee, will defeat the purpose of the donor and give them to the commonwealth as an escheat.

It is now settled that a valid gift of non-negotiable securities may be made by delivery of them to the donee without assignment or indorsement in writing. This principle has been applied to notes, bonds, stock and deposit certificates, and life-insurance policies. In Pennsylvania, Wells v. Tucker, 3 Binn. 366; Licey v. Licey, 7 Pa. 251, and Madeira's App., 17 W. N. 202, are illustrations of and rest upon it, and it has distinct recognition and approval in other deliverances of this court. In Walsh's App., 122 Pa. 177, we refused to extend it to a depositor's bank-book, but acknowledged "that, in the case of notes and other instruments payable to order, a delivery accompanied by words importing a present absolute gift would invest the donee with the ownership of the fund." The bank-book was regarded as on the same footing as a book of original entries, and the mere delivery of it to the donee as insufficient to pass any title to the accounts appearing upon it. But "a certificate of deposit is a subsisting chose in action, and represents the fund it describes, as in case of notes, bonds, and other securities, so that delivery of it as a gift constitutes an equitable assignment of the money for which it calls:" Basket v. Hassel, 107 U. S. 602. In the case last cited, Mr. Justice MAT-

THEWS, after an exhaustive examination of the authorities, said : " The point which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think, that the instrument or document must be the evidence of a subsisting obligation, and be delivered to the donee so as to vest him with an equitable title to the fund it represents and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift inter vivos, but upon the recognized conditions subsequent, in case of a gift mortis causa."

The shares of stock are choses in action, and the certificates evidence of the title to them : Slaymaker v. Bank, 10 Pa. 373. Why may not a delivery of the certificates, coupled with words of absolute and present gift, invest the donee with an equitable title to the stock, which the donor or a volunteer cannot successfully assail?    A stockholder may clothe another with the complete equitable title to his stock without compliance with the forms printed by the corporation : United States v. Vaughan, 3 Binn. 394 ;  Commonwealth v. Watmough, 6 Wh. 117 ;  Building Ass'n v. Sendmeyer, 50 Pa. 67 ;  Finney's App., 59 Pa. 398 ; Water-Pipe Co. v. Kitchenman, 108 Pa. 630.

As the gift in question was supported by a valuable consideration, and the instruments which represented the ownership of the donor in the subject-matter of the gift were delivered to the donee, we think she has a title to the securities which cannot be destroyed in a proceeding by the commonwealth to escheat them.

Judgment affirmed.

