## Raub's Estate.

*Transfer inheritance tax—Appraisement—Appeal from—Question raised by—Transferred stocks—Husband and wife—Presumptions—Act of June 20, 1919.*

1. On appeal from appraisement for transfer inheritance tax involving transferred securities, the question is, under section 13 of the Act of June 20, 1919, P. L. 521, as to the valuation of the decedent's estate and the amount of tax, and involves merely whether the securities in question are part of the estate and not the title to them.

2. On appeal from an appraisement for transfer inheritance tax it appeared that, prior to her death, the decedent's husband had caused certificates for certain stocks to be issued in her name, which she in turn transferred in blank and gave back to him, without any consideration passing to either, all dividends being credited to him and she having declared she had no interest in the stocks, and on her death none of them were found with her effects, though by her will she bequeathed them to her husband: *Held,* that these stocks were not part of her estate and should be stricken from the appraisement.

*Quære.* Whether, in the light of the present-day emancipation of woman, the reason does not seem less cogent than formerly for the presumption that a transfer of stock by a husband to a wife without consideration is a gift, but a transfer by her to him is as trustee for her use.

Appeal from appraisement for transfer inheritance tax. O. C. Lancaster Co

*Charles G. Baker,* for estate and appeal; *M. E. Musser,* contra.

SMITH, P. J., Feb. 26, 1925.—This is an appeal from the appraisement for transfer inheritance tax. The only question before us is as to the valuation of the decedent's estate and, coincident therewith, the amount of tax collectible. Section 13 of the Act of June 20, 1919, P. L. 521, provides that: "Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within thirty days, to the Orphans' Court. . . . Upon such appeal, the court may determine all questions of valuation and of the liability of the appraised estate for such tax. . . ."

Stock of the Brunswick Hotel Corporation and of the Raub Supply Company, together valued at $610,228, is included in the appraisement. The appellant is Amos K. Raub, who is the husband of the testatrix and the administrator *c. t. a.* of her estate. It is claimed that this stock is not a part of the estate.

The facts as we find them sustain this claim. Amos K. Raub was a stockholder of the Brunswick Hotel Corporation, having seventy-five shares. Of

these he transferred seventy shares to his wife, whereupon a certificate for that number of shares was issued in her name. Immediately thereafter, the same day we understand, she signed in blank on the back of the certificate an assignment with a power of attorney to transfer this stock, and delivered the certificate to Raub. From that time it has not been out of his possession. She received a certificate for nine and one-third shares, being a stock dividend, which was assigned and has been held in like manner. All the checks given by the corporation for dividends made payable to her order she at once endorsed and handed over to Raub, who received the money represented by them. He was and is the president of the Raub Supply Company. He caused to have issued in his wife's name certificates of stock of this company aggregating 6716 shares and surrendered a like number of shares previously held by him. In addition to this, she received a stock dividend of 3600 shares, making 10,316 shares, which appeared on the stock book of the company in her name. Like in the case of the Brunswick Hotel Corporation stock, soon after these certificates were turned over to her, she assigned and delivered them to her husband, who has had them from that time. All the dividends declared by this company in which this stock participated were credited on the books of the company to the account of Amos K. Raub. None of the stock thus transferred to him in either company was registered in his name, nor did any valuable consideration pass to either assignor for the stock transferred.

None of the stock referred to was a part of the estate of the testatrix. This finding is confirmed by the statements of the testatrix. We quote from the testimony (pages 30, 31, 32, 37 and 38) : "She laughingly said, 'I hold stock, but I don't have any interest in it.' " "She would always say she held stock, but had no interest in it." "Yes, she would always say, 'This is my stock, but I don't own it; I have no interest in it.' " Referring to the making of a will by her: "She would always laughingly say, 'Why should I make a will? I have nothing to leave.' " "Q. When you were present and she signed her name, did she make any statement or declaration as to title or ownership of these certificates of this stock? A. Yes, she would say they were hers in name only, that she derived no benefit from them at all." "A. She would say they were hers in name only, but really belonged to my father" (Amos K. Raub). As against this we find the following bequests in her will, which she wrote: "First, I hereby give and bequeath to my husband Amos Kissel Raub all the stock I hold in the Raub Supply Co. Second, I also give to my husband Amos Kissel Raub all the stock I hold in the Brunswick Hotel." If she held no stock in either company, nothing was given her husband by her will. There is no way to prevent one from writing in his or her will anything he or she may fancy, and not infrequently has it happened that testators have bequeathed that which was not theirs to give. It would be about as much of a guess to attempt to interpret her intention in thus bequeathing as it would be to speculate as to Raub's reason for having the stock certificates issued in the name of his wife and immediately having her transfer them to him. But howsoever that may be, we find that no stock of the Brunswick Hotel Corporation nor of the Raub Supply Company was found with her effects and none is a part of her estate, and, therefore, the stock appraised and valued at $610,228 is stricken out and the appraisement reduced accordingly and fixed at $1539.14.

It has been held that the physical delivery of a stock certificate may constitute a transfer of the stock: Com. v. Crompton, 137 Pa. 138. See, also, Act of May 5, 1911, P. L. 126. The transfers by the testatrix to her husband

Raub's Estate.

were not ineffective because they were executed in blank: Shattuck *v.* American Cement Co., 205 Pa. 197. In Tide Water Pipe Co. *v.* Kitchenman, 108 Pa. 630, the court said: "We held in Finney's Appeal, 59 Pa. 398, on the authority of the Com. *v.* Watmough, 6 Whart. 117, and of the Building Ass'n *v.* Sendmeyer, 50 Pa. 67, that title to the stock of a corporation passed to a purchaser at the time of the delivery of the certificate and power of attorney, and the fact that the stock was transferable only on the books of the company made no difference."

The testimony and circumstantial evidence clearly warrant the finding that none of the stock was a part of the estate of the testatrix, and, therefore, none of it should have been included in the appraisement. It was argued that it is presumed that when Raub transferred the stock, it was a gift to his wife, but when she transferred it to him, presumptively he took it as a trustee for her use: Loeffler's Estate, 277 Pa. 317. In the past there have been reasons for this sort of discrimination between husband and wife, but in the light of the present-day effeminization, since woman has fallen from her superior estate to the plane of equality with man, the motive seems less rational. But admitting that these presumptions are not antiquated, they remain only presumptions and may be overcome "by clear, explicit and unequivocal" proof, which has been done in this case by testimony which is unimpeached: Earnest's Appeal, 106 Pa. 310; McDermott's Appeal, 106 Pa. 358.

We are not deciding as to the title to this stock. That is not the issue. If it was, it would be certified to the Court of Common Pleas to be determined by the verdict of a jury.

The appeal is sustained. Costs to be paid by the Commonwealth.

From George Ross Eshleman, Lancaster, Pa.