(53 App. Div. 602.)

SNOOK v. SULLIVAN et al.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

1. GIFTS—RELATION OF PARTIES—BURDEN OF PROOF.
    Donor of stock certificate was the great-aunt of S., the donee, and though
    quite old and feeble, and liable to be nervous over business matters,
    her mental faculties were unimpaired. S. had lived near donor in boy-
    hood, had resided with her for some time, and continued to see her several
    times a year thereafter, though married, and living at some distance. He
    had studied law, though not admitted to the bar, and for a number of
    years had acted as donor's agent and business adviser, and was entirely
    in her confidence. *Held*, that the burden of proof to support the gift as
    against donor's legatees was on the donee to show that donor fully under-
    stood the nature of her act, and that the same was voluntary, and free
    from fraud of the donee, since the relation between them was one of trust
    and confidence, similar to that between attorney and client.

2. SAME—EVIDENCE.
    The evidence to support a gift of certificate of stock made by an aged
    lady to one who stood in confidential relations to her was mainly that of
    the donee's wife, who testified that the donor asked the donee to fill out the
    blank assignment on the back of the certificate, stood over donee while
    he read the assignment aloud, and instructed him how he should fill in the
    blanks; that donor produced and affixed a red seal to the assignment.
    Donor was old and feeble, and liable to be excited and nervous over busi-
    ness matters, and was substantially dependent on the dividends from this
    stock for her support. Donee's wife was corroborated by his father and
    brother, who testified to statements of donor that she had given donee
    the stock. Donee never told any one except his own family of the gift
    till after donor's death, two years later, nor did he present the certificate
    for transfer to himself till after donor's death, but continued to draw the
    dividends under a power of attorney from donor, as before. After donor's
    death, donee read to the assembled relatives her will, executed 20 years
    before, and making a different disposition of the stock, but said nothing
    about the gift to him. *Held*, that the evidence was not sufficient to support
    the gift.
        Adams, P. J., dissenting.

Appeal from special term, Onondaga county.

Action by Helen J. Snook, as administratrix, against Lottie E.
Sullivan, as executrix, and the Merchants' National Bank of Syracuse.
From a judgment dismissing the complaint (55 N. Y. Supp. 1073), and
from an order denying a new trial, plaintiff appeals. Reversed.

The action was brought to set aside a transfer by plaintiff's testatrix, Harriet
White, of a certificate of 16 shares of the capital stock of defendant the Mer-
chants' National Bank to Robert F. Sullivan, who died since the trial. The
substance of the material allegations of the complaint is, in brief, that the
assignment of the stock was void on the grounds (1) that the assignor was
incompetent, by reason of advanced age, physical disability, and mental weak-
ness, to make the same; and (2) that it was without consideration, and its

execution was procured by undue influence, or through the assignee's taking ad-- vantage of the relationship of trust and confidence existing between him and. the assignor, whose agent and attorney he was, and concealing from her the true nature and effect of the assignment, and that it was not made at the time it bears date. The answer of the assignee puts in issue these allegations, and avers that the stock was transferred in consideration of work, labor, and services which he had performed for her, and through sympathy, owing to the fact that he had become disabled, by a partial stroke of paralysis, from. earning support for himself and his family. The stock was issued to the assignor on March 4, 1867. The assignment was made on the back of the certificate; the form printed thereon, filled out in writing by Sullivan, the assignee, being used. It purports to have been made on the 2d day of April, 1895, and Sullivan and his wife signed as witnesses, and a seal was affixed. She, as his executrix, has been substituted as a party defendant. Sullivan was registered. as a law student, and studied law in connection with teaching between 1885 and 1890, and tried a bar examination, but was not admitted. He graduated from Cornell University in 1883, and taught most of the time after that until June, 1890, and thereafter he edited a paper. On July 20, 1891, he had a stroke of paralysis, which partially paralyzed his left side. He lived with the assignor during the winter of 1878 and 1879, and taught school in that district, and thereafter he resided some distance from her house, but saw her four or five times a year. His mother was her niece, and he was brought up near where his great-aunt resided, and saw her frequently in his boyhood days. For the last seven years of her life she lived alone. As early as April 16, 1888, she gave him general power of attorney to draw her money that might be on deposit from time to time in the Onondaga County Savings Bank, and it appears that he frequently drew money for her thereafter from that and other banks, and made collections for her during the time he studied law and subsequently, and advised her concerning her business transactions, which were quite limited. She had the fullest trust and confidence in him. She died on the 19th day of September, 1897, being then 81 years of age. For some years prior to her death she had been in feeble health, and easily became nervous and excitable over business transactions; but otherwise the evidence justified the finding that her mental faculties were unimpaired. Sullivan did not present the assignment to the bank until October 6, 1897,—17 days after her death,—and prior thereto he informed no one excepting the members of his own family that he held the assignment. After the assignment was made, and until the death of the assignor, he continued to draw dividends on the stock in her name, as her attorney, pursuant to a power of attorney, the same as he had done for a long time prior to the execution of the assignment. He testified that he did not know that it was necessary to present the stock, and have it transferred on the books of the bank, until after the death of the assignor, when he took legal counsel as to what he should do. Sullivan's wife testified that they drove over to see Miss White on the day the assignment was executed; that she shook hands, and kissed him as usual, asked about his health, and if he thought he was improving, to which the witness replied she thought he was if he could get out of business; that thereupon Miss White left the room, and returned with the certificate of stock, and told Sullivan she wanted him to fill that in as she directed; that he sat down at a desk, and at her request he read the printed form aloud, she looking over his shoulder, and, as he came to a blank, she told him how to fill it out, and after it was filled out he read it over to her, and she produced and placed upon it a red seal, and then requested the witness and her husband to sign as witnesses, whereupon she gave the assignment to Sullivan, who said he could not take it; that he should continue to pay her dividends as he had done, and, after hesitating awhile, she finally said, "Well, perhaps it is better so;" that nothing more was said, and he took the paper away with him; that they had not visited her since the summer before, and that they visited her thereafter only once, in June, 1896, and that a week later the witness and Sullivan's mother called to see her when over in that vicinity picking berries; that Sullivan did not write Miss White, to the knowledge of witness, but that he was there at her home again two weeks before she died,—just before she died; that witness did not know of any other property that Miss White owned at the time. Sullivan's father says that in the spring or summer of 1895 he called on

Miss White, and she inquired about Sullivan, and said he ought to get along now, as she had given him her bank stock, and Sullivan's brother says that the fall before Miss White died she inquired about Sullivan, and said she had given him her bank stock. The nearest relatives plaintiff's testatrix left were three nieces. On the 15th of October, 1877, the testatrix made her will, in which she gave the dividends on her stock and the use of her house and lot to her sister, and provided that at the death of the sister the stock and house and lot were to be divided between her heirs, consisting of the three nieces, equally. The day after the death of the testatrix her will was found, and Sullivan read it aloud at her house to the assembled relatives, and then said nothing about the bank stock referred to in the will having been assigned to him. Sullivan assigned to the bank officials as a reason for not presenting the assignment sooner that he had arranged with the decedent that the stock should not be transferred to him until after her death, and that she was·to have the dividends as long as she lived, adding that she had always intended to give the stock to him for his services, that he had been unfortunate in being paralyzed on one side, and that she preferred to do it that way, rather than by will. So far as appears, the decedent was dependent for her support upon the dividends received from this stock.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN,. JJ.

William B. Crowley, for appellant.
George H. Sears, for respondents.

LAUGHLIN, J. The facts stated show the existence of a relation of trust and confidence between the decedent and Sullivan similar to that existing between an attorney and client, bringing the case within the principle of the rule applicable to the latter relation, and the burden of proof was upon the defendant to show by clear, convincing, and satisfactory evidence that the decedent perfectly understood the nature and effect of the assignment; that the execution thereof by her was free from fraud, and was her voluntary act. Pom. Eq. Jur. § 960; Story, Eq. Jur. §§ 311, 312, 312b, 312d; Freelove v. Cole, 41 Barb. 318; Nesbit v. Lockman, 34 N. Y. 167; Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430; Ross v. Ross, 6 Hun, 80; Tucker v. Dean, 21 Wkly. Dig. 519; Lansing v. Russell, 13 Barb. 510; Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684; Case v. Case, 49 Hun, 83, 1 N. Y. Supp. 714; In re Manhardt, 17 App. Div. 1, 44 N. Y. Supp. 836.

In the Nesbit Case, supra, the rule is well stated as follows:

"It is certain that the law regards a transaction like the one in question with great suspicion; that where persons standing in a confidential relation make bargains with, or receive benefits from, the persons for whom they are counsel, attorney, agent, or trustee, the transaction is scrutinized with the extremest vigilance, and regarded with the utmost jealousy. The clearest evidence is required that there was no fraud, influence, or mistake; that the transaction was perfectly understood by the weaker party; and usually evidence is required that a third and disinterested person advised such party of all his rights. The presumption is against the propriety of the transaction, and the onus of establishing the gift or bargain to have been fair, voluntary, and well understood rests upon the party claiming, and this in addition to the evidence to be derived from the execution of the instrument conveying or assigning the property."

In the Tucker Case, supra, the court say:

"When relations exist between two persons founded upon ties of blood, love, and affection, to which are added those of confidence in fiduciary matters, and

a contract is made, or any proceeding adopted, by which one disposes to the other of all his property, the law regards the transaction with great jealousy, and requires that it shall be established by testimony which must be so reasonably certain as to establish beyond reasonable doubt not only the fairness and validity of the transaction on its merits, but that it was not the result of undue influence exerted through the elements above stated."

In the case at bar the decision rests upon the testimony of Sullivan's wife, corroborated somewhat by his father and brother, but impeached by his silence, and by his conduct and course of dealing with this stock subsequent to the assignment and prior to decedent's death. The testimony of Mrs. Sullivan is not convincing. It is improbable that the decedent, if she thoroughly understood the transaction, would have parted with the title to this stock, the income of which apparently was her only support; and it is still more improbable, in view of her advanced age, and tendency to nervousness over business transactions, that she would or could have supervised the execution of this assignment, including the attaching of the seal, in this lawyer-like manner, and have given such minute directions with reference to filling out the blanks to Sullivan, who had studied law, and transacted her business for years.

In Farian v. Wiegel, 76 Hun, 462, 28 N. Y. Supp. 95, the court say:

"We do not think the evidence by which the gift is sought to be established is 'clear and convincing, strong and satisfactory.' All of the testimony tending to support the gift was given by the donee's wife, and, while she had no present legal interest in establishing it, experience has shown that the interest of a loyal wife in the affairs of her husband is as intense as his own, and quite as likely to warp her judgment and accuracy when testifying in his behalf as is the legal interest of the husband to warp his judgment when testifying in his own interest. Besides the fact that the title by gift is supported only by a witness who has, in all senses except the legal one, a strong interest, there are circumstances of great probative force, which render the testimony of the wife improbable, or at least far from satisfactory and convincing."

In Ridden v. Thrall, supra, it was said:

"Such a gift [referring to a gift causa mortis asserted after death] should be proved by very plain and satisfactory evidence; and, if the case depended upon the evidence of the wife alone, any court might well hesitate to uphold the gift."

In Re Manhardt, supra, Judge Follett, writing the opinion of the court, said:

"The gift in the case at bar is sought to be sustained as a gift inter vivos, but when such a gift is not asserted until after the death of the alleged donor the evidence to sustain it must be as clear, strong, and convincing as the evidence required to sustain a gift causa mortis."

We regard the slight corroborative evidence of the wife of the donee in this case as itself unsatisfactory and improbable, and are of opinion that the defendant failed to sustain the burden of proof resting upon her. The judgment appealed from is therefore reversed, and a new trial granted, with costs to the appellant to abide the event.

All concur, except ADAMS, P. J., who dissents.