ALLEN-WEST COMMISSION CO. v. GRUMBLES et ux.

(Circuit Court of Appeals, Eighth Circuit. April 8, 1904.)

No. 1,979.

1. GIFT—INTENTION OF DONOR—RENUNCIATION OF DOMINION—DELIVERY.

A fixed intention by the donor to irrevocably divest himself of title, dominion, and control of the subject of the gift at the very time he attempts to make it, the actual accomplishment of that purpose, and the delivery of the subject of the gift, are indispensable conditions of a valid donation.

2. SAME—CORPORATE STOCK—DELIVERY OF CERTIFICATES.

The delivery of the subject of the gift must be made in the most effectual mode to command dominion over it.

The delivery of certificates of shares of stock, when they are present and their delivery is practicable, is indispensable to a valid gift of stock in a corporation, because the possession of the certificates commands the dominion of the stock in the most effectual way.

3. SAME—DELIVERY OF WRITTEN ASSIGNMENT—EFFECT.

The delivery of a written assignment of stock in a corporation is ineffectual to make a valid gift, while the donor retains the certificates.

4. SAME—EVIDENCE—CONCLUSIONS.

G., the owner of 110 shares of stock in a corporation, delivered a written assignment of his interest in its business to his wife in May, 1899, when he was free from debt. He retained the certificates of the shares, voted them, and received dividends upon them, in money and in stock, until February, 1903, when he had become heavily involved in debt. He then transferred the stock to his wife by an indorsement and surrender of the certificates to the corporation.

*Held*, G. had no intention in May, 1899, to then divest himself of the dominion and control of the stock, a delivery of the certificates of the stock was indispensable to accomplish such a purpose, and the delivery of the written assignment, while the donor retained and used the certificates to control the stock, was insufficient to complete a valid gift.

---

¶ 2. See Gifts, vol. 24, Cent. Dig. § 50.

5. GARNISHMENT—ORDER ON GARNISHEE TO DELIVER INTO COURT.

Under the statutes of Arkansas, where the garnishee appears by affidavit, and does not appear in person, or submit to an examination, or make default, the plaintiff is not entitled to an order that the garnishee shall deliver the property of the defendant in his possession, or that he shall pay the money which he owes the defendant, into court. His remedy is by compelling an examination under oath, or by an action under section 360, Sand. & H. Dig.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Arkansas.

The Allen-West Commission Company, a corporation, brought an action against J. H. Grumbles to enforce his liability under the statutes of the state of Arkansas for the debt of a bank of which Grumbles was president, and recovered a judgment of $21,133.35 against him. No attack is made upon this judgment. The indebtedness which it evidences had arisen in the years 1902 and 1903. On March 30, 1903, the plaintiff issued an attachment in its action against Grumbles, and garnisheed Mary E. Grumbles, his wife. The ground of the attachment and garnishment was that Grumbles had disposed of his property with intent to delay and defraud his creditors. The defendant in the action denied this averment. The issue thus made was tried by the court, which made a special finding of facts, dissolved the attachment, and discharged the garnishee, on the ground that there was no proof that Grumbles had disposed of any of his property with intent to delay or defraud his creditors. The writ of error challenges the judgment of dissolution of the attachment and of discharge of the garnishee, and counsel for the plaintiff in error rely upon the following facts to sustain their averment that this judgment was erroneous:

In May, 1899, the Mann-Tankersley Drug Company was a corporation of the state of Arkansas, engaged in the business of dealing in drugs at wholesale and retail at Pine Bluff, in that state, and the defendant James H. Grumbles was free from debt, and was the owner of 110 shares of stock in this corporation, of the value of $3,700, which was evidenced by a certificate of his ownership of these shares, which was in his possession. On May 14, 1899, he made and delivered to his wife an instrument in these words:

"Know all men by these presents, that I, J. H. Grumbles, of Nashville, Arkansas, for and in consideration of the sum of five dollars ($5.00) to me in hand paid by Mary Grumbles, and for the further consideration of love and affection that I have for my beloved wife, Mary Grumbles, and for the further purpose of making a division of my property with my wife, the said Mary Grumbles, the receipt whereof is hereby acknowledged, do hereby bargain, sell, and deliver unto the said Mary Grumbles all my right, title, and interest in the Mann-Tankersley Drug Company business, a corporation organized and existing under the laws of the state of Arkansas, and doing business in the city of Pine Bluff, Arkansas, under the corporate name of the Mann-Tankersley Drug Co., said business being a wholesale and retail drug business, and my interest in said business or corporation being of the value of about thirty-seven hundred dollars. To have and to hold the same unto the said Mary Grumbles, and her heirs and assigns, forever. And I, the said J. H. Grumbles, do hereby covenant to warrant and defend the title to said bargained interest in the said Mann-Tankersley Drug Co. business unto the said Mary Grumbles, and unto her heirs and assigns, forever, with all privileges and rights enjoyed by me in said business.

"Witness my hand and seal this 14th day of May, 1899.

"J. H. Grumbles."

He kept the certificate for the 110 shares of stock in his possession, and voted and received dividends in money upon it until February, 1903. Prior to this time he had incurred his liability to the plaintiff and had become insolvent. On February 7, 1903, the surplus earnings of the 110 shares of stock entitled it to a dividend of 144 additional shares of stock, and these additional shares were issued to and received by Mr. Grumbles. On February

25, 1903, Grumbles indorsed and surrendered the certificates for the entire 254 shares, and caused new certificates therefor to be issued to his wife, Mary E. Grumbles.  On March 14, 1903, Mary E. Grumbles sold this stock to innocent purchasers for $6,032.50.  No notice of the May assignment to Mrs. Grumbles was given to the Mann-Tankersley Company until after January, 1903.  The stock stood in the name of James H. Grumbles on the books of the corporation until February 25, 1903.  The transfers of it subsequent to February 24, 1903, were entered on the books of the corporation, and the certificate thereof was filed with the clerk of Jefferson county, in the state of Arkansas, before the attachment herein was made.

W. B. Smith (J. M. Moore, on the brief), for plaintiff in error.
W. T. Wooldridge (F. G. Bridges, W. P. Feazel, and J. W. Bishop, on the brief), for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The crucial question in this case is:  Did the delivery in May, 1899, by the defendant Grumbles to his wife, of the formal bill of sale of his interest in the Mann-Tankersley Drug Company business, constitute a completed gift of his 110 shares of stock in the corporation, in view of the fact that Grumbles retained the certificate of the shares, kept the stock in his own name upon the books of the company, voted and received dividends upon it until after he had become hopelessly insolvent and then transferred it to his wife by an indorsement and surrender of the certificate without the use of the assignment of 1899, of which no notice had been given to the corporation?  If this question should be answered in the affirmative, the transfer by Grumbles to his wife in February, 1903, was no evidence of an intent on his part to hinder or defraud his creditors, because the stock had not been his since May, 1899.  If, on the other hand, this question should be answered in the negative, that transfer was conclusively fraudulent as against creditors, because it was a voluntary conveyance, without valuable consideration, after the donor had become heavily indebted to his various creditors.

While the assignment recites a consideration of five dollars and of love and affection, counsel for Mr. and Mrs. Grumbles do not claim, nor has the court below found, that this instrument evidences any sale for value of the 110 shares of stock, or that $5, or any other sum, was ever paid as a part of the consideration for the execution or delivery of that assignment.  Moreover, if that question were presented here for our consideration, the written instrument and the facts disclosed by the findings of the court would lead our minds to the conclusion which counsel for all parties to this litigation have tacitly adopted.  At the time the assignment was made the stock was worth about $3,700.  It is not a rational inference that property of this value was sold for $5.  Again, the entire assignment must be read and construed as a whole.  When thus read, it declares that it was made for $5, for love and affection, and for the purpose of making a division of the property of the grantor.  The natural inference from these recitals is that it was a voluntary assignment without valuable consideration, and that the reference to the $5 is the usual form of recital

which is frequently inserted in instruments of this character, when no valuable consideration is actually paid. Baltimore Retort & Fire Brick Co. v. Mali, 65 Md. 93, 94, 3 Atl. 286, 57 Am. Rep. 304.

We come, therefore, to the only question to which counsel have addressed their arguments—to the question whether or not, under the law applicable thereto, the facts of this case will sustain the conclusion that the defendant Grumbles made a valid gift of his stock in the Mann-Tankersley corporation to his wife on May 14, 1899, when he delivered to her the assignment in question. In every case of an alleged gift, the burden of proof is upon the donee to establish a complete and valid donation. Jones v. Falls (Mo. App.) 73 S. W. 903. Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in præsenti at the very time he undertakes to make the gift (Lehr v. Jones, 74 App. Div. 54, 77 N. Y. Supp. 213; Bickford v. Mattocks, 50 Atl. 894, 95 Me. 547; In re Estate of Soulard, 141 Mo. 642, 657, 659, 43 S. W. 617; Newman v. Bost [N. C.] 29 S. E. 848, 850); the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no farther act of dominion or control over it (Basket v. Hassell, 107 U. S. 602, 614, 615, 2 Sup. Ct. 415, 27 L. Ed. 500; Cook v. Lum, 55 N. J. Law, 373, 376, 26 Atl. 803); and the delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it. This delivery must be an actual one "so far as the subject is capable of it. It must be secundum subjectam materiam, and be the true and effectual way of obtaining the command and dominion of the subject." 2 Kent's Com. 439. If the subject of the gift is a chose in action, such as a bond, a note, or stock in a corporation, the delivery of the most effectual means of reducing the chose to possession or use, such as the delivery of the bond, or the note, or the certificate of stock, if present and capable of delivery, is indispensable to the completion of the gift. Richards v. Delbridge, L. R. 18 Eq. 11; Knight v. Tripp, 121 Cal. 674, 679, 54 Pac. 267; Miller v. Jeffress, 4 Grat. 472, 480; Matthews v. Hoagland, 48 N. J. Eq. 455, 487, 21 Atl. 1054; Wadd v. Hazelton, 137 N. Y. 215, 219, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707; Matter of Crawford et al., 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Liebe v. Battmann, 33 Or. 241, 54 Pac. 179, 72 Am. St. Rep. 705; Williams v. Chamberlain, 165 Ill. 210, 218, 46 N. E. 250; Gartside v. Pahlman, 45 Mo. App. 160.

Stock in a corporation is a chose in action, and the certificates are the evidence of its existence and of its amount. They bear some analogy to the title deeds of real estate (Com. v. Crompton, 137 Pa. 138, 20 Atl. 417); but they are far more commanding and useful in the handling of the stock they represent than are title deeds in the handling of the land they describe. Because the stock in a corporation is transferred by means of the delivery, or by means of the indorsement and delivery of the certificates, the latter by a sort of mental substitution come to be thought of and dealt in as the stock itself. The stock of corporations is ordinarily transferred on the books of the company

only by the surrender of the certificates and the issue of new ones to the grantees. Hence assignments, bills of sale, and conveyances, without the accompanying possession and delivery of the certificates, are much less effectual or available to command the title, the dominion, or the control of the stock than the mere possession of the certificates themselves. The indorsement and delivery, or the mere delivery, of the certificates, without entry of the transfer upon the books of the corporation, is generally held to constitute a valid sale of the stock between vendor and vendee, or a completed gift of it between donor and donee. Such an indorsement and delivery of the certificates generally enables the holder to enforce a transfer of the title to the stock upon the books of the corporation. Basket v. Hassell, 107 U. S. 602, 614, 615, 2 Sup. Ct. 415, 27 L. Ed. 500; Com. v. Crompton, 137 Pa. 138, 20 Atl. 417; Hopkins v. Manchester (R. I.) 19 Atl. 243; Walsh v. Sexton, 55 Barb. 251; Leyson v. Davis (Mont.) 42 Pac. 775, 793, 31 L. R. A. 429; First National Bank of Richmond v. Holland, 99 Va. 495, 39 S. E. 126, 55 L. R. A. 155, 86 Am. St. Rep. 898; Stone v. Hackett, 12 Gray, 227, 231; Cushman v. Thayer Mfg. Jewelry Co., 76 N. Y. 365, 32 Am. Rep. 315; Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 313; Reed v. Copeland, 50 Conn. 472, 47 Am. Rep. 663.

If, by an indorsement and delivery of the certificates of stock with the donative intention, the defendant had completed his gift to his wife, a court of equity would have compelled the corporation to transfer the shares upon its books. The difficulty with this case is that the certificates of shares were not delivered, no intention on the part of the donor to immediately renounce dominion and control of the stock was formed, and no executed gift was made. This was the situation: Grumbles made the assignment of his interest in the drug business to his wife on May 14, 1899. His interest was 110 shares in the stock of the corporation which was operating that business, and he held the certificate of his ownership of these shares while the title to them stood in his name upon the books of the company. The holding of the certificate of shares of stock is the customary and most effectual means of using the rights and privileges which the stock confers. The indorsement and delivery of this certificate is the usual and most efficient way of transferring the stock. Three things were essential to a valid gift of this stock by the defendant: (1) A fixed purpose, at the time he made the assignment to his wife, to then divest himself of all title, dominion, and control of the stock, and to vest these irrevocably in his wife; (2) the immediate and perfected execution of this purpose; and (3) the delivery to his wife of the most effectual means of using and reducing the stock to possession. The indorsement and delivery of the certificate to his wife would have proved all these prerequisites. Such an indorsement and delivery was the true, customary, and most effectual way to evidence the intention to transfer the title, the control, and the dominion of the stock, and to accomplish that purpose. The fact that the defendant did not pursue this plain method is in itself cogent proof that he intended to accomplish no such purpose. He made no indorsement or delivery of the certificate. He made no assignment of the stock by name or description, but simply delivered to his wife an assignment of his interest in

the business of the corporation, which she never used to obtain control or dominion of the stock, but which she quietly tucked away and never brought to light until creditors were pressing her husband for the payment of his debts, nearly four years after she received the assignment. Neither Grumbles nor his wife gave notice to the corporation of this nominal conveyance until after his bank had failed, in February, 1903, and his creditors were clamoring for payment. He received annual dividends upon the stock from May, 1899, until February, 1903. In the latter month a stock dividend of 144 additional shares accrued upon his stock, and he took the additional shares in his own name, and finally, after he had become insolvent, he transferred all these shares to his wife in February, 1903, not by the use of the dormant assignment of 1899, but by the usual and most effectual method—by an indorsement and delivery of the certificates. These are all the facts in this case from which the intention of the defendant when he made the assignment of 1899 may be deduced. He knew how to divest himself of title, of control, and of dominion of the stock; for he did so by indorsement and delivery of the certificates in February, 1903. If he ever intended to do so before that time, the evidence of that intention in this record is imperceptible. A man is presumed to intend the natural and probable consequences of his acts. The consequences of the acts of Grumbles here were that, although he delivered to his wife the dormant assignment, he retained the apparent title, the actual control and dominion of the stock, and the enjoyment of every right and privilege it commanded, for nearly four years after he parted with the written assignment, and until the pressing claims of creditors admonished him that his stock was liable to be applied to the payment of his debts, and then for the first time he invoked its aid. The deduction from these facts is irresistible. It is that the defendant Grumbles intended in 1899 exactly what he did in that and the subsequent years. He intended to retain the appearance of title, the actual dominion, control, and beneficial use of his stock, until the claims of creditors or his own decease compelled him to relinquish them. That intention is fatal to the existence of the gift he asserts. Gallagher v. Donahy (Kan.) 69 Pac. 330.

But, even if Grumbles had intended to renounce dominion and control of the stock, he could not have accomplished that purpose by the mere delivery of this assignment, because it had not that effect, and because he failed to deliver to his wife the most effectual and appropriate means of reducing the stock to possession and use—the certificate of the shares. The assignment was by its terms a conveyance of his interest in the drug business and a covenant to defend the title to that interest, together with all the rights and privileges enjoyed by him in the premises. It did not transfer the beneficial use of the stock, the privilege of voting it and of drawing dividends upon it, because these rights and privileges were transferable only by a transfer of the title of the stock upon the books of the corporation, upon the surrender of the certificate. The possession of the certificate was the sine qua non of that transfer, and the most extensive effect that the assignment could have had was to give Mrs. Grumbles the covenant or promise of her husband that he would deliver the certificate, so that she could

transfer the stock and secure its beneficial use. But a gift of a covenant or promise is void, because it is unexecuted, and every valid gift must be executed and complete. Harris v. Clark, 3 N. Y. 93, 112, 51 Am. Dec. 352.

It is said that the assignment gave the donee the right to compel the defendant to surrender the certificate and transfer the stock. But the fact is that Grumbles' possession of the certificate left him the unrestricted power, by the surrender of the certificate and the sale of the stock to a bona fide purchaser, to deprive his wife of every right under the assignment, except a right of action for damages for conversion of the stock. A gift of a right of action for conversion of stock is not a gift of stock. The present transfer of dominion and control of the stock, so that the donor cannot deprive the donee of it, is essential to a valid gift of stock. The gift of a right of action for conversion of it, or of the possibility of compelling a delivery or transfer of it by a suit in equity, is not sufficient, when the donor retains the unrestrained power to place the title, possession, and control of the stock beyond the reach of the donee at any time, and thereby to defeat such a suit in equity. Again, if the assignment had been in terms a conveyance of the stock, it would not have sustained the defendant's claim of a gift, because he failed to deliver the certificate of the shares. The certificate was the usual and most effective means of reducing the stock to possession and use. It was present. It was capable of manual delivery. In this state of the case its delivery was indispensable to a valid gift, and a separate assignment of the stock without a delivery of this certificate was ineffective.

Counsel for the defendant argue that a complete gift may be made by a written assignment or conveyance, without a delivery of the subject of the gift, and cite authorities to support this position. It is true that in cases where manual delivery of the subject of the gift, or of the evidences which command it, is impracticable or impossible, and in cases in which a written conveyance is the most effectual mode of divesting the donor of dominion and control of the thing, such a conveyance is sufficient. But it is equally true that a written assignment is utterly inadequate, where the delivery of the subject of the gift or the delivery of the evidences of it is practicable, and the latter is the more ready and efficient way of commanding the dominion and control of the subject of the gift. Thus in Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 313, a gift by means of a written assignment of 20 out of 120 shares of stock that were evidenced by a single certificate was sustained; in Bond v. Bunting, 78 Pa. 210, a gift by an assignment of all over $5,600 that should be realized from an insurance policy was maintained; and in Banks' Adm'r v. Marksberry, 3 Litt. 276, a gift by an assignment of the future income of a slave was held valid—without a delivery of the subjects of the gift. But the reason for these decisions is that the delivery of these subjects was impracticable, because others than the donee had rights and interests in them which entitled them to their possession. Again, a gift by means of an assignment made by the owners of a fund that had been collected from an insurance policy and was in the hands of executors of an estate was a good gift without a delivery of the money, because it was not in

the possession of the donors, and hence was incapable of manual delivery by them. Matson v. Abbey, 70 Hun, 475, 24 N. Y. Supp. 284. So in Tarbox v. Grant, 56 N. J. Eq. 204, 39 Atl. 378, 380, a trust deed to a third party, trustee, for the benefit of the children of the grantor, of his equitable interest in the property, was sustained as a creation of a trust; and in Walker v. Crews, 73 Ala. 412, a deed of promissory notes which by its terms reserved the right in the donor to retain and collect the notes, and to invest and reinvest their proceeds for the donee, was sustained as a gift and a declaration of trust, without a delivery of the notes. But an instrument like the assignment at bar, which was executed as an absolute conveyance, and which contains no declaration of trust, cannot be sustained as the creation or the declaration of a trust for the benefit of the donee. Wadd v. Hazelton, 137 N. Y. 215, 219, 220, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707; Young v. Young, 80 N. Y. 437, 36 Am. Rep. 634; In re Estate of Soulard, 141 Mo. 659, 43 S. W. 617; Richards v. Delbridge, L. R. 18 Eq. 11, 14, 15, overruling Morgan v. Malleson, L. R. 10 Eq. 475, and Richardson v. Richardson, L. R. 3 Eq. 686; Milroy v. Lord, 4 De Gex, Fisher & Jones, 264, 274, in which Lord Justice Turner well said: "If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust; for then every imperfect instrument would be made effectual by being converted into a perfect trust." Again, a recorded deed of real estate, or a recorded brand of cattle, in the name of the donee, without a delivery of the subjects of the gifts, may well be sustained, because the donor, by placing the record title in the donee, places the property irrevocably beyond his dominion or control. Holmes v. McDonald, 119 Mich. 563, 78 N. W. 647, 75 Am. St. Rep. 430; Love v. Francis, 63 Mich. 181, 29 N. W. 843, 6 Am. St. Rep. 290; Adams v. Adams, 21 Wall. 185, 191, 22 L. Ed. 504; Hillebrant v. Brewer, 6 Tex. 45, 55 Am. Dec. 757. But "if an owner of shares of stock in a corporation, intending to give them to A., should take the scrip to the office of the company and surrender it, and receive new scrip in the name of A., has he by this change of title on the books of the company, while retaining the entire possession and control of the scrip, and without any delivery thereof to A., accomplished a valid executed gift of the ownership of the shares to his intended donee? We should say clearly not." Matter of Crawford et al., 113 N. Y. 560, 567, 21 N. E. 692, 5 L. R. A. 71. The reason for the difference between a gift executed by a recorded deed of real estate and one unexecuted by a failure to deliver certificates of stock is that the record title to real estate controls and draws to it the possession and dominion of the property and of its title deeds, while, on the other hand, the possession of certificates of shares of stock commands the dominion and control and the record title of the stock.

The clew to the labyrinth of decisions upon this subject is the reason of the rule which makes delivery of the thing, or of the most available means of commanding its dominion and control, indispensable to the validity of a gift. That reason is the imperative necessity of requiring the renunciation by the donor, not only of all possession, dominion, and control of the thing, but of all appearance thereof, lest

by such an appearance he should lead creditors, purchasers, and others to believe, and to credit him in the belief, that he is the owner of that which in reality belongs to his donee, and lest by fraud and perjury gifts be proved which never in fact existed. Yancey v. Field, 85 Va. 756, 8 S. E. 721. This reason of the rule conditions the nature of the delivery it requires, and demands that that delivery shall, in every case, whether evidenced by written assignment or oral statement, consist as far as practicable of a delivery of that thing which will most effectually and irrevocably divest the donor of the dominion and the control of the subject of the gift, and thus of the appearance of title, whether that thing be the subject itself, a symbol of the subject, a written assignment of it, or the patent evidences of it whose delivery constitute the most effectual mode of transferring the dominion over it. In the case at bar that thing was the certificate of the shares. The delivery of that certificate was the most effectual mode of divesting the defendant of his title, of his dominion, and of his control of the stock and of the appearance thereof. It was the most efficient way of avoiding the mischief which the rule of delivery was established to prevent, while, on the other hand, the delivery of the dormant and unused assignment, unaccompanied with the delivery of the certificate, was the least effective for these purposes, and the most efficient way of promoting the mischief at which the rule was leveled. The failure to deliver the certificate was fatal to the alleged gift, because without its delivery the dormant assignment did not irrevocably deprive the defendant of the dominion and control of the stock, but left them all perfectly amenable to his will.

This conclusion is not without support in the decisions of the courts. In Basket v. Hassell, 107 U. S. 602, 614, 2 Sup. Ct. 415, 27 L. Ed. 500, a case in which the Supreme Court held that the delivery of a certificate of deposit to an intended donee, with an indorsement upon it to pay it to the latter's order, but not until the donor's death, was not a valid gift, because it did not deprive the donor of the present power of dominion and control. That court declared, as a result of a review of the authorities relative to the delivery of a chose in action, that the rule was—

"That the instrument or document must be the evidence of a subsisting obligation, and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably."

In Knight v. Tripp, 121 Cal. 674, 676, 679, 54 Pac. 267, the Supreme Court of California held a formal written assignment delivered to the donee insufficient to sustain a claim of a gift, and said:

"There must be both a purpose to give and the execution of this purpose. The purpose must be expressed, either orally or in writing, and it must be executed by the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof. A written instrument may be available for designating the property intended to be given, as well as to show the intention of the donor; but by itself it no more establishes the gift than would the same words orally delivered by the donor. * * * It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and complete gift."

In Baltimore Retort & Fire Brick Co. v. Mali, 65 Md. 93, 96, 3 Atl. 286, 57 Am. Rep. 304, the subject of the intended gift was stock in a

corporation, the certificate for which remained uncut in the stock book of the company. Thereupon the owner made a written assignment of the stock to his daughter, which recited that it was for value, although no valuable consideration was actually paid, and delivered it to the attorney for the corporation, with instructions to transfer the stock to the daughter on the books of the company as soon as the attorney obtained the consent of the mortgagee of the corporation. The court held that the intended gift was incomplete and void, because the owner had not irrevocably parted with his control and dominion of the stock.

In Matthews v. Hoagland, 48 N. J. Eq. 455, 485, 490, 21 Atl. 1054, 1065, 1067, the court refused to sustain an attempted gift of stock, evidenced by the delivery of the indorsed certificates, without any accompanying assignment, on the ground that—

"The failure of the record owner of the stock to clothe the donee with the means of at once acquiring the benefits of the stock leaves unperformed an act which prevents the gift from taking effect in præsenti, which is vital to a gift inter vivos."

In Snyder v. Snyder (Mich.) 92 N. W. 353, 354, an attempt was made to sustain a gift of a mortgage by means of a written assignment made by the donor to her son in 1888 and recorded in 1893. But it was defeated, because until she died in 1899 the donor enjoyed the beneficial use of the mortgage, not by virtue of any of the terms of the assignment, but by virtue of an oral agreement aliunde to that effect.

In Snook v. Sullivan, 53 App. Div. 602, 607, 66 N. Y. Supp. 24, affirmed in 167 N. Y. 536, 60 N. E. 1120, an alleged gift, evidenced by an assignment and delivery of the certificate of the stock, was defeated, where the donee, after the assignment, drew the dividends, as he had done before, as attorney in fact of the donor, and presumably applied them to her use.

And in Bauernschmidt v. Bauernschmidt, 97 Md. 35, 54 Atl. 637, 642, 643, the Court of Appeals of Maryland held that there was no completed gift of stock by a husband to his wife, although he placed the title of 30 shares of it in her name upon the books of the corporation and issued a certificate therefor in her name, which he subsequently surrendered to the corporation, and although he caused 140 shares of the stock to be transferred to himself and his wife, and caused a certificate therefor to be issued in their names, because during all this time he actually had the dominion and control of the stock by virtue of his possession of the certificates. The court declared in words which are peculiarly applicable to the facts of the case before us:

"He, and he alone, voted the 140 shares, and his final assertion of control over the certificate representing those shares was manifested when he transferred it in blank and delivered it to Sperry, Jones & Co. His dealing with the stock, and her acquiescence in what he did, and the fact that he could, and did, as the actual owner of all the property which the company possessed, exercise complete control over those 140 shares, show that he had never surrendered dominion over them, or put it out of his power to revoke the gift of them."

Other authorities almost without limit could be cited in support of the position that this alleged gift was incomplete and invalid, because

the defendant failed to renounce dominion and control of its subject; but perhaps our views have already been sufficiently illustrated, and farther discussion will be omitted.

The dormant assignment of May 14, 1899, did not effect a valid gift of the stock of the defendant Grumbles, because he then had no intention to immediately and irrevocably divest himself of the control and dominion of the stock, because he retained the possession of the certificate, and all the rights and privileges which the stock conferred, until February, 1903, and because he failed until that time to irrevocably divest himself of the title, dominion, and control of the stock. As this stock remained his property until many months after his indebtedness to the plaintiff accrued, his voluntary transfer of it to his wife in 1903 was in the eyes of the law a fraud upon the plaintiff, and the judgment of the circuit court that the attachment be dissolved, and the garnishee, Mary E. Grumbles, be discharged, cannot be sustained.

The statutes of Arkansas provide that each garnishee summoned shall appear in person or by his affidavit disclosing his indebtedness to the defendant and the property of the defendant in his possession (Sand. & H. Dig. § 357); that he may be required to appear in person and to submit to an examination under oath; that if, when he appears in person and is examined under oath, and when he makes default by failing to appear and the court hears proofs, the court finds that he has in his possession property of the defendant or that he is indebted to the defendant, it may order the garnishee to deliver the property or to pay the amount of the debt into the court. Sections 358, 359, Sand. & H. Dig. The counsel for the plaintiff ask this court to direct the court below to order the garnishee, Mrs. Grumbles, to pay the proceeds of the sale of the defendant's stock which she has received into the Circuit Court upon the reversal of the judgment dissolving the attachment and discharging the garnishee. But the garnishee, Mrs. Grumbles, has not as yet come within the terms of the provisions of the statutes which have been cited. She has not appeared in person or been examined under oath. She has not made default in appearance. She appeared by her affidavit, in which she denied that she was in possession of any of the property of the defendant, and denied that she was indebted to him. In this state of the case the court below may undoubtedly compel her to appear in person and to submit to an examination under oath, and then, if the evidence sustains the charge of the plaintiff, it may order her to pay the proceeds of the sale of the stock into court. But, in the absence of any proceeding of this character and of any appearance of Mrs. Grumbles in person, the remedy of the plaintiff is to proceed against her by an action under section 360, Sand. & H. Dig., which provides that, when the garnishee fails to make a disclosure satisfactory to the plaintiff, he may proceed in an action against her by filing a complaint and causing a summons to be issued upon it. The time has not yet arrived under these statutes when the plaintiff is entitled to an order on the garnishee to pay the moneys she obtained from the sale of the stock into court.

The judgment of the court below, that the attachment be dissolved, and that the garnishee, Mrs. Mary E. Grumbles, be discharged, must be reversed, and the case must be remanded to the Circuit Court, with

instructions to enter a judgment that the attachment is sustained, and to take further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.