R. C. COFFEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105452. Promulgated February 12, 1943.

*Frederick L. Pearce, Esq.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

584

OPINION.

SMITH, *Judge:* The principal question in this proceeding is whether petitioner made completed gifts to his minor children of the shares of stock represented by the certificates which he had endorsed for transfer to them in years prior to 1938. If so, the dividends paid on the shares in 1938 are taxable to the children, the owners of the shares, and not to the petitioner.

The evidence is that in each instance when petitioner endorsed the certificates for transfer to his children he stated to the witness who

signed the endorsement that he was making a gift of the shares to the child to whom they were endorsed. Thereafter, petitioner kept the certificates in his own possession and did not present any of them to the issuing corporations for transfer to the children on the corporations' books, at least until after the close of the taxable year 1938. Petitioner continued to receive the dividends from the shares and to appropriate them to his own use without making any accounting to or on behalf of the children until some time in 1938, when he was advised to do so by the accountant.

The prerequisites of a valid gift are stated in *Allen-West Commission Co.* v. *Grumbles* (C. C. A., 8th Cir.), 129 Fed. 287, as 'follows:

* * * Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in praesenti at the very time he undertakes to make the gift (*Lehr* v. *Jones*, 74 App. Div. 54, 77 N. Y. Supp. 213; *Bickford* v. *Mattocks*, 50. Atl. 894, 95 Me. 547; *In re Estate of Soulard*, 141 Mo. 642, 657, 659, 43 S. W. 617; *Newman* v. *Bost* (N. C.) 29 S. E. 848, 850) ; the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no farther act of dominion or control over it (*Basket* v. *Hassell*, 107 U. S. 602, 614, 615, 2 Sup. Ct. 415, 27 L. Ed. 500; *Cook* v. *Lum*, 55 N. J. Law, 373, 376, 26 Atl. 803) ; and the delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it. This delivery must be an actual one "so far as the subject is capable of it. * * *" * * *

In *Lunsford Richardson*, 39 B. T. A. 927, the Board said that:

It is well settled that before there can be a completed gift the donor must surrender dominion and control of the subject matter of it. *Edson* v. *Lucas*, 40 Fed. (2d) 398; *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287; *Delight Ward Merner*, 32 B. T. A. 658; 79 Fed. (2d) 985; *Adolph Weil*, 31 B. T. A. 899; 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Jackson* v. *Commissioner*, 64 Fed. (2d) 359; *Dulin* v. *Commissioner*, 70 Fed. (2d) 828. The "delivery" must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. * * *

In *Harvey* v. *Stowe*, 219 Fed. 17; affd., 241 U. S. 199, the following was quoted from *Bauernschmidt* v. *Bauernschmidt*, 54 Atl. 637, 643:

There can be no gift which the law will recognize where there is reserved to the donor, either expressly or as a result of the circumstances and conditions attending the transaction, a power of revocation or a dominion over the subject of the gift. There can be no locus penitentiae, and there is always a locus penitentiae where the supposed donor may at any moment undo what he has done.

In *Adolph Weil*, 31 B. T. A. 899; affd. (C. C. A., 5th Cir.), 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552, the court said:

* * * We do not doubt that a certificate of stock may without formal transfer be by such a delivery given; and if to a minor such parting of control and dominion *to a third person for the child is sufficient. Whether a father may deal wholly with himself for his child without writing, without cooperation of any third person who represents the child, without doing what*

*is ordinarily done to transfer this kind of property, and without parting with control over the certificate, we greatly doubt.* Generally a donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable. [Citing cases.] If the donor intends to give, and even goes so far as to transfer stock on the books of the company, but intends first to do something else and retains control of the transferred stock for that purpose, there is no completed gift. [*Italics supplied.*]

The evidence in this case leaves considerable doubt in our minds whether petitioner had a definite intention at the time he endorsed these certificates for transfer to his children immediately to divest himself of the title, dominion, and control of the shares absolutely and irrevocably. Undoubtedly petitioner intended to invest the children with some interest in or claim upon the shares, else his acts in making the endorsements would have been meaningless. Possibly he intended to complete the gifts at some future date, or had the certificates endorsed to his children so that in case of his death they might claim the ownership of the shares. As to that, however, we can only speculate. In any event, in view of other circumstances, we can not find that petitioner's act of endorsing the certificates to his children with the declaration that he was giving the shares to them constituted present gifts of the shares to the children. Actually petitioner retained the same complete dominion and control over the shares after the endorsements as before. He made no attempt to have any of the shares transferred to the children on the books of the companies until after the close of the taxable year. He continued to receive the dividends from the shares for his own personal use and to enjoy all the benefits of ownership in them. There was nothing in petitioner's subsequent actions, up to the time of the accounting in October 1938, to indicate that he regarded himself as holding the certificates as trustee or guardian for the children. Cf. *H. C. Priester*, 33 B. T. A. 230, and *Edward H. Heller*, 41 B. T. A. 1020.

For these same reasons we can not find that petitioner made an irrevocable transfer or delivery of the shares to the children, so that he could exercise no further act of dominion or control over them.

The most effective means of transferring shares of stock to a purchaser or donee is by endorsement and delivery of the certificates to the transferee, followed by the surrender of those certificates to the transfer agent and the issuance of new certificates in the transferee's name. The mere transfer of shares to the name of a donee on the company's books with intent to make a gift is sufficient to pass title, even though the transferor retains possession of the certificates. See *Essie Irene Gaffney, Executrix*, 36 B. T. A. 610; *Kathryn Lammerding*, 40 B. T. A. 589; *Marshall* v. *Commissioner*, 57 Fed. (2d) 633.

In *Miller* v. *Williams*, 194 Iowa, 1305; 192 N. W. 798, it was said

that an endorsement of a stock certificate only emphasizes the evidence of the endorser's intention to complete the gift. Something else is required, however, before the transfer becomes completed. In the instant case there was no transfer of the shares to the children on the companies' books, no manual delivery of the certificates to them, and no segregation of those shares from petitioner's other securities until some time in 1938. There was nothing to keep the petitioner at any time from making other endorsements of the certificates or other transfers of the shares and thereby undoing all that he had done towards making the gifts to his children.

In *Edward H. Heller, supra,* where gifts from a father to his minor children were held valid, we pointed out that the father had always been careful, after the gifts were made, to keep the funds and securities comprising the subject matter of the gifts segregated in separate bank accounts carried in the children's names. We said, too, that the result might have been different if the father had made a "systematic or even occasional personal use of the funds or securities." While the petitioner here admits that he consistently appropriated all of the dividends from the shares in question to his personal use, he claims that he thereby became indebted to the children for the large amounts represented by the promissory notes which he executed to the children in 1938. This so-called accounting to the children was made at the suggestion of petitioner's accountant, who prepared the notes for petitioner's signature. Petitioner testified that he did not know how the amounts of the notes were arrived at or why there were two separate notes for each child; that he had expected to make an accounting to the children when they became 21 years of age.

It might be observed at this point that there is no question here of bad faith on the part of either the petitioner or the accountant who prepared his returns. The present difficulty arises, apparently, from a misunderstanding of the legal effect of petitioner's endorsements of the certificates to his children.

For the reasons which we have stated, and which we believe to be impelling, we have concluded that petitioner did not make completed gifts of the shares in question to his children prior to the close of the taxable year 1938. It follows that the dividends on such shares paid in 1938 were petitioner's income and should be included in his individual return for that year.

Our determination on the first issue necessarily disposes of the second issue. For if the dividends which petitioner received on the shares in question were his own and not the children's income, then he owed them no interest on the use of such dividends and is not entitled to deduct the $4,462.44 which he claims as interest paid to them in 1938 for use of the dividends received in 1937.

588

Issue 3, involving the dividends declared but not paid on shares which the petitioner transferred to the trusts for his children in 1938, has been conceded by petitioner.

Issue 4 involves the claimed deduction of $6,037.21 for travel, cost of automobile upkeep, telephone and telegrams, legal fees, auditing fees, and "Miscellaneous." The respondent disallowed these items in determining the deficiency herein on the ground that petitioner was not regularly engaged in a trade or business and that the amounts claimed are therefore not allowable as ordinary and necessary business expenses.

Under section 121 (a) (2) of the Revenue Act of 1942, which is retroactive, the allowable expense deductions were broadened to include certain nontrade or nonbusiness expenses. The new provision reads as follows:

(a) EXPENSES.—

* . * * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

It is stipulated that petitioner paid each of the items in dispute during the taxable year for the purpose indicated in his return. The evidence clearly supports the respondent's determination that the petitioner was not regularly engaged in carrying on any business during the taxable year. Our question therefore is whether the items in dispute were ordinary and necessary expenses paid for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Petitioner testified that the travel expenses amounting to $1,909.96 were paid in making trips to Toronto, Canada, and to several different points in the United States to look after business interests or to inspect business properties. As such the expenditures come within the provisions of the statute.

Petitioner further testified that the item of automobile upkeep, amounting to $1,122.31, covered gasoline, tires, oil, and repairs for one of several family automobiles which he used in making some of his business trips; that it also included his monthly expenditures for this automobile at the Orlando garage; that he sometimes found it more convenient to use the automobile than to use the train. Petitioner does not claim that the automobile was used exclusively for business purposes, nor is there any evidence upon which we can make an allocation between business and nonbusiness use. Neither does the evidence show what particular part of the amount claimed is attributable to the cost of any or all of the business trips. In these circumstances we think that the entire amount must be disallowed.

The next of these items is "Telephone & Telegraph $155.86." Since the evidence is that all of this item represents the cost of telegrams and telephone calls relating to business matters, the item is deductible in full.

The legal fees of $1,047.93 were paid to a firm of lawyers in Des Moines, Iowa, for services rendered in obtaining a reduction of local tax assessments on petitioner's business properties located in that city. As such, we think that the expenditure was ordinary and necessary and was for production of income as well as for the management of income-producing property.

The accountant's fees of $1,750 represent an amount paid to the accountant whom petitioner employed to straighten out his accounts, open a set of books for him, prepare his income tax returns, and adjust his liability for local taxes on intangibles. The accountant testified in this proceeding as to the nature of the services which he performed for petitioner and gave a breakdown of the $1,750 item as follows:

| | |
|---|---:|
| Adjustment of tax on intangibles | $1,000 |
| Assisting and establishing trusts for the children | 200 |
| Accounting and preparation of income tax returns | 550 |
| Total | 1,750 |

The amount paid for the adjustment of local taxes on intangibles is an allowable deduction. The taxes in question were assessed, or were to be assessed, on petitioner's income-producing securities and its adjustment was necessary "for the management, conservation, or maintenance of property held for the production of income." The balance of the $1,750 item, we think, is not deductible. The cost attributable to establishing the trusts for petitioner's children was clearly a personal expense and was not within any of the statutory provisions. According to the accountant's testimony the remaining $550 was attributable to "the accounting and income tax matters" and only a small amount of time was spent in the preparation of the returns. On this evidence we can not find that any of the $550 is allowable.

There being no evidence as to the nature of the expenditure of $51.15 designated "Miscellaneous," the amount is disallowed.

The next and last issue relates to the claimed deduction of $1,277.20 representing the cost of maintenance and care of the citrus grove. The evidence before us fails to show sufficient grounds for reversing the respondent's disallowance of this item. We are convinced that petitioner did not acquire or operate the grove as a business venture, and that in a true sense it can not be classified as income-producing property. Certainly, petitioner was not engaged in any business of raising citrus fruits. We think that the citrus grove was merely an adjunct of petitioner's residence and that what little income he may have

received from it was incidental. The amounts expended for its care and maintenance were no more than might normally be required for similar noncommercial properties. Petitioner has not reported any income from the grove in the taxable year and we do not think that he has proven the right to deduct any expenses on its account.

*Decision will be entered under Rule 50.*