OLIVER M. KAUFMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IRWIN D. WOLF AND MARTHA K. WOLF, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5165, 6567. Promulgated March 12, 1946.

*W. A. Seifert, Esq., Sidney B. Gambill, Esq.,* and *A. G. Wallerstedt, C. P. A.,* for the petitioners.

*Homer F. Benson, Esq.,* for the respondent.

446

OPINION.

SMITH, *Judge*: The principal question presented by this proceeding is whether Edgar J. Kaufmann made a gift of 1,000 shares of common stock of Kaufmann Department Stores, Inc., to his brother Oliver

and a like amount at the same time to his sister Martha in 1921, as contended by the petitioners, or in 1925, as contended by the respondent. It is conceded that if the gifts were made in 1925 the respondent's determination of deficiencies is correct. If, on the other hand, the gifts were made in 1921, a different basis must be used.

In *Adolph Weil*, 31 B. T. A. 899; affd. (C. C. A., 5th Cir.), 82 Fed. (2d) 561, we said:

From an examination of the authorities we find the essential elements of a bona fide gift *inter vivos* to be (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti*; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee; *Edson v. Lucas*, 40 Fed. (2d) 398, and authorities there cited. Cf. *Allen-West Commission Co. v. Grumbles* (C. C. A., 8th Cir.), 129 Fed. 287; *Edwin J. Marshall*, 19 B. T. A. 1260; affd. (C. C. A., 6th Cir.), 57 Fed. (2d) 663; certiorari denied, 282 U. S. 61.

Does the evidence in this case show "a clear and unmistakable intention on the part of the donor [Edgar J. Kaufmann] to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti*"?

The respondent contends that it does not. In his letter to his sister, Martha, dated June 22, 1921, Edgar did not inform his sister that he was making her a gift of the stock. He did inform her that he was transferring 1,000 shares of the common stock of the Kaufmann Department Stores, Inc., to her name and that the stock was pledged at the Union Trust Co. on a loan which Edgar made for the estate of Morris Kaufmann. He then said: "Am making this transfer as I do not care to have the dividends come to me in my name for Federal Tax purposes." He further informed her that the dividends would be sent to her quarterly. She clearly was advised by this letter that she was to get the dividends. He further advised her: "Do not want you to feel in the least obliged to return these dividends to me because I know that this Thousand Dollars every quarter will come in handy." Quite clearly Martha could upon the receipt of this letter understand that she was to receive the dividends on the shares of stock. There would certainly be no reason for his assuring her not to feel obliged to return the dividends if there was an absolute gift of the shares to her. He further advised her that: "The only instruction I care to give you in this letter is that in case of my death I will have to depend upon your settling this stock satisfactorily with my estate." Of course, if Edgar had made an absolute gift of the shares to his sister there would be no occasion for her settling anything with Edgar's estate in case of his death.

It is further noted that in his letter of June 22, 1921, to Kaufmann Department Stores, Inc., Edgar advised the corporation: "When this transfer has been completed you will kindly accept this letter as a dividend order and make all future dividend checks payable *until further notice as follows.*" (Italics supplied.) This letter was over the signature of Edgar J. Kaufmann. Why was this reservation made in the letter to Kaufmann Department Stores, Inc., unless Edgar J. Kaufmann intended to retain dominion and control of the shares?

We think that the evidence does not show an intent on the part of Edgar absolutely and irrevocably to divest himself of the title, dominion, and control of the subject matter of the gift. The shares of stock which Edgar purported to give to his brother Oliver and to his sister Martha were in his own name. He had the right to vote them; he had the right to direct to whom the dividends should be paid. He also had the right to do anything with the shares that an owner had. There was absolutely no delivery of any muniment of title to the alleged donee.

The alleged gift of the 1,000 shares to his brother Oliver was orally made. Oliver testified that the arrangement made by Edgar with him was the same as the arrangement made with his sister Martha. Whether Oliver saw the letter that was sent to Martha by Edgar, he does not remember. Edgar did not make any written assignment of any shares to Oliver. There was absolutely no delivery of anything to Oliver. He simply received the dividends upon the shares and no call was ever made upon him by Edgar to return them to him.

The petitioners allege that a person can make a valid gift of shares of stock owned by him and deposited as collateral. But it is plain that such collateral is subject to the debts secured thereby. See *Bingham* v. *White*, 31 Fed. (2d) 574. Even if Edgar had intended to give to his brother and sister the deposited collateral, the only property which Edgar had in the deposited collateral was the value of the collateral in excess of the debt. The petitioners contend that the value of the collateral to secure the $300,000 loan from the Union Trust Co. was greatly in excess of the amount of the loan. Even if this be so, the Union Trust Co. was not required to look to any particular collateral as security for the loan. In case of default by Edgar upon his note to the Union Trust Co., that company clearly would have been entitled to sell the 4,000 shares of common stock which stood in Edgar's name. There is no evidence of record to show the value of the 2,000 shares of collateral stock which Edgar purported to give to his brother and sister in 1921 over the amount of the indebtedness.

The petitioners contend that the shares of stock which were given to them by Edgar were received by Edgar as a gift from his father long prior to his death. Edgar testified that the gift made to him by his father in about 1915 was evidenced by some writing, but that

writing has not been put in evidence. Edgar was interrogated as to whether the 4,000 shares of common stock which he claimed to have received from his father as a gift was a part of the assets of his father's estate and administered as a part of the estate. He first testified that that was so, but later contradicted himself. It is not understood why if these shares were received from his father as a gift they should have been held by the executors and trustees for a period of about four years before they were delivered to Edgar. He was at a loss to understand why they had not been delivered to him immediately upon his father's death. The petitioners contend that the basis for determining the value of the shares of stock is the cost or March 1, 1913, value of the shares to Morris Kaufmann, and much evidence was introduced to show the financial condition of the company on March 1, 1913, and prior thereto. We are of the opinion, however, that it is not necessary to determine the "fair market value" of the shares on March 1, 1913.

The respondent admits that the petitioners acquired their shares of 5 percent preference stock, or the shares from which they were derived, from Edgar by gift. He contends, however, that since there was no delivery of these shares prior to 1925, at which time each of the petitioners received shares of Securities, the basis for the shares can not antedate 1925. The parties have stipulated that if it can not antedate 1925, then the determinations of the respondent are correct. We are of the opinion that the respondent has made no error in his determination.

*Decision will be entered for the respondent.*