Appeal of M. FOWLER.                    Docket No. 2423.

Appeal of MRS. M. FOWLER.               Docket No. 2424.

Subdivision (b) of section 211 of the Revenue Act of 1918 does not provide for a separate surtax upon profits from the sale of mines, oil and gas wells, but for the limitation of a ratable proportion of the tax (computed in the ordinary manner), attributable to such profits, to 20 per cent of the sale price.

Submitted April 30, 1925; decided May 23, 1925.

*Harry C. Weeks, Esq.*, for the taxpayers.

*Blount Ralls, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

These appeals are taken from deficiencies in income taxes for 1918 asserted by the Commissioner against M. Fowler in the sum of $22,497.23, and against Mrs. M. Fowler in the sum of $28,502.81. The amounts in controversy are $4,934.71 in each appeal. The question in dispute is with respect to the proper application of subdivision (b) of section 211 of the Revenue Act of 1918. The facts are not in dispute.

FINDINGS OF FACT.

The taxpayers are husband and wife living together in Texas. In 1918 they acquired as their community property a five one-hundred-and-twentieths interest in a joint venture known as the Fowler Farm Oil Co., at a cost of $500 in cash, paid in 1918, and on or about August 2, 1918, they conveyed that interest to the Fowler Farm Oil Co., a Texas corporation, and received therefor stock in said corporation of the reasonable and actual market value of $83,645.80. All other persons interested in said joint venture at the same time conveyed

their interests to said corporation, which took over all of the property theretofore belonging to the joint adventurers. Between the time the taxpayers acquired their interest in the joint venture and the transfer to the corporation in the manner aforesaid, oil had been discovered upon the oil and gas lease belonging to the joint adventurers by prospecting and development work carried on by the taxpayers and the other joint adventurers, and this prospecting and discovery work done by the taxpayers and associates demonstrated the principal value of the property, for, before the prospecting and development work was completed, the entire property belonging to the joint adventurers did not have a value of more than $12,000, whereas, after oil was discovered and at the time of the transfer to said corporation, said property, including said oil well, had a value of $2,000,000 or more.

The entire net income of each of the taxpayers from all sources for the calendar year 1918 was $88,934.01. The total profit to the community estate of the taxpayers from the Fowler Farm Oil Co., above set out, was $83,145.80, in which each had a half interest, or $41,572.90.

The Commissioner computed the income and profits taxes of the taxpayers for 1918 according to the method provided in article 13 of Regulations 45 (quoted in opinion below) and found the deficiencies appealed from.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: The question involved here is the validity of that part of article 13 of Regulations 45 which indicates the Commissioner's theory of the proper method of applying the provisions of subdivision (b) of section 211 of the Revenue Act of 1918.

Subdivision (a) of section 211 of the Revenue Act of 1918 provides for graduated rates of surtax, beginning at 1 per cent on the amount of net income between $5,000 and $6,000, and increasing to 65 per cent on the amount in excess of $1,000,000 of net income. Subdivision (b) of that section provides:

In the case of a bona fide sale of mines, oil or gas wells, or any interest therein, where the principal value of the property has been demonstrated by prospecting or exploration and discovery work done by the taxpayer, the portion of the tax imposed by this section attributable to such sale shall not exceed 20 per centum of the selling price of such property or interest.

The parties agree that this subdivision is applicable to the taxes under consideration, but disagree as to the proper method of applying it.

Each of the taxpayers had a net income for 1918 of over $88,000, which, except for the provisions of subdivision (b), would be subject to surtax under subdivision (a) at rates running up to 43 per cent. Almost one-half of such income is attributable to a sale of oil wells, governed by subdivision (b).

The taxpayers contend that the profit from the sale of oil wells should be treated, in computing excess-profits taxes, entirely separate from the balance of the income. They claim that the balance of the

income—$47,361.11 in each case—should be treated as if it were all the net income, and taxed at rates running up to 22 per cent, and that the profit from the sale of oil wells should be separately computed at not more than 20 per cent of the sale price.

The Commissioner contends that the surtax should be computed according to the method prescribed in article 13 of Regulations 45, which provides:

> To determine the application of this provision to a particular case, the taxpayer should first compute the surtax in the ordinary way upon his net income, including his net income from any such sale. The proportion of the surtax indicated by the ratio which the taxpayer's net income from the sale of the property, or his interest therein computed as prescribed in article 715, bears to his total net income is the portion of the surtax attributable to such sale, and if it exceeds 20 per cent of the selling price of the property or interest such portion of the surtax shall be reduced to that amount.

There are in theory three possible methods of computing the tax. The net income may be likened to a pile of dollars from which the Government proposes to take varying percentages, beginning with nothing from the first five thousand at the bottom, 1 per cent of the next thousand above them, 2 per cent of the next two thousand, 3 per cent of the next two thousand, and so on upward to the top of the pile.

If the profit from the sale of oil wells should be regarded as constituting the dollars at the bottom of the pile, and the balance of income as constituting the dollars above it on the pile, the provisions of subdivision (b) of section 211 would avail these taxpayers nothing, for that portion of the tax attributable to the oil-well profit would be much less than 20 per cent of the sale price, and the balance of income would be taxable at rates running up to 43 per cent.

If the profit from the sale of oil wells should be regarded as constituting the dollars at the top of the pile, the advantage to the taxpayers would be great, for none of their income would be subjected to surtax at rates as high as 20 per cent.

If the profit from the sale of oil wells should be regarded as constituting a ratable portion of each dollar in the pile, the taxpayers would be benefited by the operation of subdivision (b) to the extent that the proportion of the total tax attributable to the profit on oil wells exceeded 20 per cent of the sale price.

The taxpayer contends that the second method should be adopted, or that the tax on the oil-well profit should be separately computed at 20 per cent of the sale price, which would bring about the same result.

The Commissioner contends that the third method, which is that provided for in article 13 of Regulations 45, is the correct method.

We believe that the Commissioner is right. The statute does not provide for the separate taxation of profits from the sale of oil wells. It does not provide for the division of incomes into separate parts, each to be subjected to surtaxes beginning at low rates. It does not provide that the profit from the sale of oil wells shall be regarded as constituting the last income received or as the income which, except for subdivision (b), would be subjected to the highest rates. The entire net income for the year is treated as a single unit, no definite part of which is subject to one rate or another, but every part of which stands on a parity with every other part. The statute does

not even refer to that part of the *income* due to sale of oil wells. What it says is that the portion of the *tax* imposed by this *section* (not subdivision) attributable to such sale shall not exceed 20 per cent of the sale price. It is clear to us that this means a ratable proportion of the whole tax determined by the ratio of such profit to the whole net income. The tax should be computed in the ordinary manner, and the ratable proportion of it attributable to the profit on sale of oil wells should be reduced to 20 per cent of the sale price. This is what the Commissioner has done, and his determination must be approved.

The taxpayers' counsel contends that the rule contained in article 13 of Regulations 45 must be invalid because, if applied to certain hypothetical cases presented by him, it will result in absurdities. His examples are cases in which there are net losses from other transactions, more than offset by gains from the sale of oil wells. And it is true that, if the rule of the regulation were literally applied, the results would be absurd, in some instances throwing the net tax into minus quantities. To our minds the regulation has no application in such cases. When a taxpayer has losses from other business, more than offset by gains from the sale of oil wells, the entire tax when computed under subdivision (a) of section 211 is attributable to such gains (for without them there would be no tax) and should be limited, under subdivision (b), to 20 per cent of the sale price of the wells. But the regulation results in no absurdity when applied to cases in which there is net income from other sources, as in the instant appeal, and should govern with respect to them.