## APPEAL OF S. L. FOWLER.

Docket No. 5814.   Promulgated February 19, 1927.

1. Evidence *held* insufficient to establish gifts by the taxpayer of interests in a joint venture.

2. Claimed loss on sale of stock disallowed in view of lack of evidence to show sales price.

3. Commissioner's application of provisions of section 211(b) of Revenue Act of 1918 approved. *Appeal of M. Fowler,* 1 B. T. A. 1212; *Fowler* v. *United States,* 11 Fed. (2d) 895; 16 Fed. (2d) 925.

4. The evidence does not sustain the allegations of the Commissioner in his answer that the deficiency should be increased over the amount of which he notified the taxpayer in the sixty-day statutory notice.

*Harry C. Weeks, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency in income tax for the calendar year 1918 in the amount of $58,417.45, of which only a part is in controversy. The issues are: (1) The amount of interest owned by the taxpayer in a joint venture and exchanged for capital stock of a corporation; (2) the amount of gain or loss on the sale of 20 shares of capital stock; and (3) the correct method of applying the surtax provisions of section 211(b) of the Revenue Act of 1918.

### FINDINGS OF FACT.

The petitioner is an individual residing at Fort Worth, Tex.

In 1918 he was engaged in the business of farming and stock raising. He owned, and resided on, a farm of 500 acres north of the town of Burkburnett, Tex. In the spring of 1918 he purchased an additional 200 acres and secured oil and gas leases on 100 acres of land adjacent to his farm. These purchases were made and the leases secured for the purpose of drilling for oil.

On June 30, 1918, a number of persons, including the taxpayer, signed an agreement whereby they agreed to pay various sums aggregating $12,000 to J. A. Staley, Trustee, for the purpose of drilling an oil well on the 300 acres above mentioned, of which the taxpayer owned a part and held leases on the balance. The taxpayer agreed to lease to Staley that part of the 300 acres he owned and to transfer to Staley the leases on the remainder. It was further agreed that the subscribers were to have interests in the 300 acres and in the corporation which was to be formed in the event oil and gas were found in paying quantities, in amounts proportionate to their subscriptions. The taxpayer's subscription to this fund was $1,000. The enterprise was designated in the agreement as the Fowler Farm Oil Co.

The taxpayer took the contract for drilling the well for $12,000 and sublet it to the Burk Drilling Co. for the same amount, but agreeing in addition to furnish water and fuel oil. The well, which proved to be very productive, was drilled on land owned by the taxpayer and was completed on July 27, 1918.

On August 8, 1918, a number of the owners of interests in the enterprise known as the Fowler Farm Oil Co. subscribed for stock in a company to be incorporated for the purpose of taking over the property of the unincorporated enterprise. In August, 1918, the taxpayer and two other persons executed a certificate incorporating the Fowler Farm Oil Co. with a capital stock of $12,000, divided into 1,200 shares of the par value of $10 each. To the certificate was attached a list of the subscribers to the capital stock of the corporation with the amount subscribed by each, in which the taxpayer is listed as having subscribed and paid $950. The certificate of incorporation was indorsed by the Secretary of State as filed in his office on August 12, 1918.

Prior to the organization of the corporation the taxpayer purchased from each of two others their $100 interest in the joint venture. He also disposed of a one hundred and twentieth interest to each of his two sons-in-law.

On September 9, 1918, certificates of stock of the corporation were issued in exchange for the interests at one time owned by the taxpayer in the joint venture as follows:

| To whom issued. | Certificate No. | Shares. | To whom issued. | Certificate No. | Shares. |
|---|---|---|---|---|---|
| S. L. Fowler | 48 | 60 | J. G. Hammond | 52 | 10 |
| Mrs. Beth Fenner | 49 | 10 | C. H. Gilchrest | 53 | 10 |
| Conde Fowler | 50 | 10 | | | |
| J. G. Fowler | 51 | 10 | Total | | 110 |

Prior to incorporation of the company and before executing a lease to the company on his land, the taxpayer stated to J. A. Staley,

the trustee under the joint venture agreement, that he had given three one hundred and twentieth interests to his daughter and her husband and to his minor sons.

In 1919, at or about the time of dissolution of the corporation, the stock issued to the taxpayer's children and his sons-in-law was transferred to the name of the taxpayer who, upon the sale of the company's properties in the spring of 1919, collected the amount represented by the stock in his name. He later turned over to his sons-in-law and his children the amount he had collected on the 50 shares of stock issued to them upon organization of the corporation.

At the time of incorporation of the Fowler Farm Oil Co. the properties had a value of $2,000,000, or $1,672.92 per share of stock.

On December 30, 1918, the taxpayer sold 20 shares of stock of the Fowler Farm Oil Co.

In computing the deficiency here involved the Commissioner applied the 20 per cent surtax provision of section 211(b) of the Revenue Act of 1918.

OPINION.

ARUNDELL: The principal question involved in this appeal is the amount of the interest owned by the taxpayer in the unincorporated enterprise known as the Fowler Farm Oil Co. at the time of the organization of a corporation of the same name which issued its stock for interests of the individuals in the enterprise. The taxpayer originally subscribed $1,000 to the enterprise, while in the list of subscribers for the corporate stock his subscription is given as $950. A revenue agent's report in evidence shows the taxpayer as entitled to 110 shares of stock of a total par value of $1,100. The latter figure is the one used by the taxpayer as the basis of his computation, and includes 20 shares purchased shortly before the organization of the corporation. The difference between the several figures above is not explained in the record, but as both parties agree upon the amount of 110 shares as a basic figure we will accept it is being correct for the purpose of deciding the case.

It appears that in computing the deficiency the Commissioner did not question the disposition by the taxpayer to Hammond and Gilchrest of interests for which 20 shares of stock of the corporation was issued. Of the remaining nine one hundred and twentieth interests the taxpayer claims that prior to incorporation of the company he had given one one hundred and twentieth interest to his daughter, Mrs. Fenner, and her husband, and one one hundred and twentieth interest to each of his minor sons, John and Conde Fowler. The Commissioner denies that the taxpayer gave these three one hundred and twentieth interests to his children and his

son-in-law Fenner, basing his denial of the alleged gifts on the lack of delivery.

It is a well recognized rule that one of the elements necessary to establish a valid gift *inter vivos* is delivery of the property. This rule has been amply supported by the courts. In *Bowen* v. *Kutzner*, 167 Fed. 281, 296, it is said,

Gifts inter vivos of personal property, to be effective, must be accompanied by the delivery of the possession, the donor parting with all present and future dominion over it; the donor must be divested of, and the donee invested with, the right of property in the subject of the gift; it must be absolute, irrevocable, without any reference to its taking effect at some future time; and without such proof, clear and explicit, the gift fails. No mere promise or declaration of intention to give will suffice, however clearly the same may be established. Nothing short of a complete and unconditional delivery is sufficient to constitute a valid gift, and, until delivery, the gift is inchoate and revocable.

The decision in that case is cited with approval in *Mahan* v. *Plank*, 289 Fed. 722, 726, and, as far as we can find, it has never been overruled. In *Lust* v. *Miller*, 4 Fed. (2d) 293, 295, it is held:

There is no principle better established in the law than that, in a gift, delivery and acceptance are necessary to pass title. Until there is delivery and acceptance, the donor parts with neither equitable nor legal title, and the power of absolute revocation rests with him, with no intervening right in favor of the donee.

To the same effect is *Lee* v. *Lee*, 55 App. D. C. 344; 5 Fed. (2d) 767, holding that:

It is settled law that before a gift can be regarded as complete and passing absolute title to the property, there must be an unqualified delivery of possession.

The opinion in the latter case quotes from *Allen-West Commission Co.* v. *Grumbles*, 63 C. C. A. 401, 404; 129 Fed. 287, 290, as follows:

Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in praesenti at the very time he undertakes to make the gift; * * * the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it (*Basket* v. *Hassell*, 107 U. S. 602, 614, 615, 2 Sup. Ct. 415, 27 L. Ed. 500); * * * and the delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it.

The taxpayer has cited a number of Texas cases holding that actual manual delivery of the subject-matter is not essential to effect a valid gift. These cases deal for the most part with transactions wherein the donor of the gift either made an assignment in writing or took some positive step designed to be a delivery and which the court held to be a constructive or symbolic delivery.

The taxpayer says that in the present case there was nothing capable of actual delivery. It is undoubtedly true that the property itself could not be manually delivered, but it does not follow that some evidence of ownership could not be delivered had there been an intent to pass title *in praesenti*. On the whole the evidence is insufficient to support the taxpayer's claim that he disposed of three one hundred and twentieth interests by gift prior to incorporation of the Fowler Farm Oil Co.

The petition alleges that the Commissioner erroneously treated the sale of 20 shares of stock in the Fowler Farm Oil Co., a corporation, as occurring prior to incorporation. The Commissioner, in his answer, admits error in this respect and further admits, as alleged in the petition, that the stock was sold on December 30, 1918. The Commissioner denies, however, that the taxpayer received only $9,803.50 for the stock, upon which figure the taxpayer bases his claim for a loss realized on the sale. No proof was offered as to the sales price of the stock, and we are accordingly unable to find that the taxpayer sustained the loss claimed.

In computing the tax in this case the Commissioner applied the surtax provisions of section 211(b) of the Revenue Act of 1918 according to the method set forth in article 13 of Regulations 45. This method has been approved by the Board in *Appeal of M. Fowler*, 1 B. T. A. 1212, and by the United States District Court for the Northern District of Texas in *Fowler v. United States*, 11 Fed. (2d) 895; 5 Am. Fed. Tax Rep. 5920.

On January 11, 1927, the Circuit Court of Appeals for the Fifth Circuit affirmed the decision of the District Court (16 Fed. (2d) 925) saying in part:

We deem the provisions of the statute too plain to require either interpretation or construction. The method of calculation adopted by the Treasury Department is simple and reasonable and fully conforms to both the spirit and letter of the law.

A great deal of the taxpayer's brief is devoted to an attempt to show that the transfer of interests in the unincorporated organization to the corporation was not a taxable transaction. The assignment of errors in the petition contains no allegation of error on the part of the Commissioner in holding the transfer to be taxable, and, this question not being placed in issue by the pleadings or any amendments thereto, we deem it unnecessary to pass upon it.

The Commissioner, by incorporating in his answer a copy of a letter dated earlier than the date of the notice to the taxpayer of the deficiency, seeks to set up a greater amount as a deficiency than the amount shown as a deficiency in the letter from which this appeal is taken. This amounts to an attempt by the Commissioner to find an additional deficiency, which is prohibited by section 274(f) of the

Revenue Act of 1926. The Board, under section 274(e) may redetermine a deficiency in an amount greater than that asserted by the Commissioner, but such a redetermination would need the support of facts. Here the Commissioner made no attempt to prove that the greater amount of tax referred to in the letter of earlier date is the correct amount rather than the amount shown by his letter of final determination, and the findings set forth in the earlier letter do not have in their favor the presumption of correctness as have those in the notice of final determination. We, accordingly, can not find that the deficiency is greater than the amount set forth in the Commissioner's letter of June 20, 1925, from which the appeal is taken.

> *Judgment will be entered on 15 days' notice,*
> *under Rule 50.*