HARRY A. REOUX, Respondent, *v.* ADELIA H. REOUX, Appellant.

Third Department, May 15, 1957.

*Ernest B. Morris* for appellant.

*C. E. Fitzgerald* and *Thomas J. McCarthy* for respondent.

*Per Curiam.* Defendant appeals from a judgment of the Supreme Court, entered upon the report of an Official Referee, which directed defendant to deliver to the plaintiff indorsements or assignments of certain stocks and bonds, said to have an approximate value of $45,000, which were included in a bill of sale executed by the defendant on the 1st day of February, 1954. The judgment also dismissed a counterclaim of the

defendant which sought a judgment directing plaintiff to return to her certain other securities said to have an approximate value of $40,000.

Plaintiff is a lawyer and son of defendant. It is his contention that the transfers in question stemmed from an oral agreement made in 1924 between him and his parents by which the latter agreed that upon the death of either or both of them he would receive one half of their estates in consideration for his services in looking after their business interests and properties. After plaintiff's graduation from law school he returned to the home of his parents in Warrensburg, New York. Thereafter the testimony indicates that he performed many services in connection with the various interests and properties of his parents until his father's death in 1938. However in connection with at least one enterprise he received a salary, and in addition he was engaged in the practice of law, and a member of the Assembly for many years. After his father's death he continued to act for the defendant, his mother, in various matters. His father left by will his entire estate to the defendant and plaintiff acted as her attorney, she being the executrix thereof.

In his bill of particulars plaintiff alleged that the oral agreement referred to provided in effect that he and his sister would share equally in all distributitons made either before or after death in the property and estates of his father and mother. We do not find any testimony either by him or on his behalf which sustains this enlarged scope of the alleged agreement, and the Referee did not so find. The finding is simply that "both agreed that upon the death of either or both of them, the plaintiff would receive one-half of their estate, or both estates." This finding squares with the testimony of the plaintiff. The importance of this lies in the fact that whatever may be said as to the validity of the alleged agreement it was, on the plaintiff's own testimony, simply an agreement to make a will in his favor for one half of the parents' estate. The only will set forth in full in the record is that of the defendant which she made on July 21, 1953, by the terms of which she left legacies of $7,000 to each of her two grandsons, directed the cancellation of a $10,000 note made by the plaintiff to her, and then divided her residuary estate equally between the plaintiff and his sister. Thus it would seem, irrespective of any question of fact as to the making of the alleged oral agreement or its legal validity, defendant substantially complied with the very agreement which the plaintiff claims.

Defendant denies that the alleged oral agreement was ever made but in any event this question is not the real issue involved in the case. The real issue is whether plaintiff, acting both as an attorney and as a son, obtained from his mother the possession of stocks and bonds under circumstances that amounted to undue influence and overreaching on his part. We cannot find from the record any evidence that defendant was legally obligated to transfer to the plaintiff any of the securities involved in either the plaintiff's claim or the counterclaim of the defendant, and such being the case the transfers involved take on the aspect of gifts. A gift of course requires no consideration but on the other hand when questioned it must be shown to have been freely and voluntarily made. Where a confidential relationship exists between parties a valid gift must be established by evidence that is clear and satisfactory. Where parties do not deal on terms of equality it requires but slight evidence to shift to the donee the burden of proving by clear and satisfactory evidence that any transfer of property in question was free and voluntary on the part of the donor. (*Starr* v. *Vanderheyden,* 9 Johns. 253; *Snook* v. *Sullivan,* 53 App. Div. 602, affd. 167 N. Y. 536; *Gick* v. *Stumpf,* 126 App. Div. 548; *Cassidy* v. *Cassidy,* 285 App. Div. 1040.)

In the light of these simple principles we think the plaintiff failed to sustain the burden which was cast upon him by the confidential relationship that existed between him and his mother, and we reach this conclusion wholly from his own testimony. He obtained possession of the securities, which are the subject of his claim and also include those which are the subject of the defendant's counterclaim, by opening the defendant's safe-deposit box by force. It is true that he had her written consent to do so, but this consent must be viewed in the light of the circumstances under which it was obtained. This happened in 1953 when defendant was about 80 years of age, and after she had been ill and confined in a nursing home. After she left the nursing home she went to the home of the plaintiff some time in September, 1953. There a conversation ensued between herself and plaintiff concerning $40,000 worth of stock which was then in her safe-deposit box in the Emerson National Bank in Warrensburg, N. Y. The parties disagree as to just what was said but in any event plaintiff obtained defendant's consent to open her box by force because she could not locate the key to it, or didn't have it with her. Shortly after the opening of the box was forced and plaintiff took the securities into his possession she executed assignments of the securities that are the subject of the counterclaim herein.

According to the testimony of the plaintiff himself she was at the time "somewhat vague and forgetful and uncertain about matters" and "her head seemed a little fuzzy".

Following this episode defendant executed while she was in Florida the bill of sale under which the plaintiff claims. This instrument was executed, according to the testimony of the plaintiff, after a discussion with the defendant concerning certain real estate which she had conveyed to the plaintiff's sister. It was drafted by a Florida attorney for the plaintiff but it is not claimed that the defendant was in any way represented by such attorney at the time. This bill of sale included all of the securities which plaintiff had removed from the defendant's safe-deposit box and retained in his possession, except those which are the subject of her counterclaim and which she had previously endorsed or assigned to plaintiff.

From the whole record it appears that there was no financial discord between the plaintiff and defendant until some time in 1949. In that year plaintiff had apparently become resentful of gifts which defendant had made to his only sister and her children with whom the mother resided. There is no doubt that after the death of her husband the defendant from time to time made gifts of property to both the plaintiff and his sister. The plaintiff himself was given a house and lot which he estimated to be valued at $10,000; some shares of stock in the Emerson National Bank and also 100 shares of General Electric; and in addition was forgiven an obligation to pay a note for $10,000. The Referee rather tartly observed in his opinion: "Apparently both children were endeavoring to strip the mother of her property." But the Referee was convinced that the daughter had enriched herself out of property to the detriment of her brother, and had imposed her will upon the mother. The Referee then concluded that when the defendant was freed from the domination of the daughter she made gifts of the securities in question here to the son in order to make an equitable distribution of her property. We take it that the Referee decided the case in favor of the plaintiff upon the ultimate theory that the transfers in question were freely and voluntarily made by the defendant because of course it was beyond his power to compel an equitable distribution, or as a matter of fact to make any finding with reference thereto. There is no proof in the record as to the value of any prior gifts made by the defendant to the daughter except that they did not equal those made to the plaintiff. We have no doubt that the Referee intended to equitably dispose of a distressing situation, and indeed it might be found that the plaintiff himself

fully believed that he was entitled on an equitable basis to the securities in question but these matters are irrelevant to the decisive issues in the case, or at least have only a subordinate bearing upon them.

It is clear that the defendant had no legal obligation under the alleged oral agreement or otherwise to give the plaintiff anything during her lifetime. He, on the other hand, was bound by the highest punctilios of honor, in view of the fact that he was acting for the defendant both as her son and as her attorney, to see to it that the defendant was meticulously advised as to her rights and duties. That burden became his from the very nature of the confidential relationship that existed between them, and especially so in view of her age and condition. As we have heretofore indicated we think he failed to sustain that burden. By his own admission he advised her on several occasions that there was a valid and subsisting agreement on her part to convey to him one half of her property. There is no indication that he limited this advice to the proposition that she had agreed to make a will in his favor. Although from his own observation she appeared to be vague and forgetful about matters he never suggested independent counsel either by way of business or legal advice. While the undertones of the record reveal a feud between plaintiff and his sister the lawsuit has to do of course with the rights of the defendant. Even if it should be found that the sister had unduly enriched herself from the defendant's estate that would not justify plaintiff from overreaching where he was acting as an attorney as well as a son.

The judgment should be reversed and an order made directing judgment, dismissing the complaint and granting the relief prayed for in the defendant's counterclaim.

FOSTER, P. J., BERGAN, COON, and HALPERN, JJ., concur; GIBSON, J., not voting.

Judgment reversed, on the law and the facts, and judgment of dismissal on the plaintiff's cause of action directed, and judgment on the defendant's counterclaim directed in favor of the defendant, without costs. Settle order.